## HARRY HALE *v.* STATE OF MARYLAND
[No. 4, October Term, 1938.]

320

*Decided November 3rd, 1938.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Paul B. Mules,* for the appellant.

*Hilary W. Gans, Deputy Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney for Baltimore City,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the State.

SHEHAN, J., delivered the opinion of the Court.

Harry Hale was presented in the Criminal Court of Baltimore City for bastardy. The indictment charges that: "Harry Hale, late of said City, on the eleventh day of February, in the year of our Lord nineteen hundred and thirty-seven, at the City aforesaid unlawfully did beget upon the body of a woman, namely Edna Doney, a female bastard child, of which said female bastard child, she, the said Edna Doney, was afterward, to wit, on the eleventh day of November in the year of our Lord nineteen and thirty-seven, delivered at the City aforesaid, and which said female bastard child was on the day last aforesaid, in said year, at said City, born alive of the body of the said Edna Doney, and is there still living." The accused pleaded not guilty and elected to be tried by the court. There was a verdict of guilty, and upon motion a new trial was granted. Upon his second trial the court again found him guilty, and from the judgment entered on the verdict this appeal was taken. The question here presented arises upon the rulings of the trial court with reference to the admissibility of testimony offered on the part of the State by Edna Doney, the mother of the child, tending to prove the illegitimacy of her offspring.

In the trial of this case it was first established that Edna Doney was a married woman at the time of the conception and birth of the child. This being so, the presumption of its legitimacy arises with all the force and the favor the law accords to it, in support of the legitimacy of the child, and thus placed upon the State the exacting burden to show to the contrary by clear, satisfactory and convincing evidence, and in the manner laid down in *Harward v. Harward,* 173 Md. 339, 196 A. 318, and in *Scanlon v. Walshe,* 81 Md. 118, 31 A. 498, and further to show beyond a reasonable doubt that the accused was the father of the child. This is the gauge of proof required by the law as construed and defined by this court in these two cases. The language there adopted is that "A child born of a married woman is, in the first instance, presumed to be legitimate. The presumption thus established by law

is not to be rebutted by circumstances which only create doubt or suspicion; but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse."

In questioning the legitimacy of a child, evidence of the character and quality above defined must be offered before the mother should be allowed to testify to illicit relations with its alleged father, and that he was the father of her child. *Howell v. Howell,* 166 Md. 531, at pages 541 and 542, 171 A. 869. In this case, where nonaccess of the husband was satisfactorily shown, it was held error to exclude the testimony of the wife bearing on the question of identification of its father. This rule finds support in *Commonwealth v. Di Matteo,* 124 Pa. Super. 277, 188 A. 425; *Commonwealth v. Gantz,* 128 Pa. Super. 97, 193 A. 72; *In re Wray's Estate,* 93 Mont. 525, 19 P. 2nd. 1051. *In re Gird's Estate,* 157 Cal. 534, 108 P. 499, 502, it is stated that: "Nonaccess by the husband being clearly shown, or at least being shown to a reasonable certainty, the positive testimony of Alice as to the paternity of her children was competent evidence, and, under the law, sufficient basis for a finding by the jury on the question of paternity."

A further discussion of the rule and the reasons for it may be found in *Harward v. Harward,* 173 Md. 339, 196 A. 318, where Judge Offutt fully reviewed the cases and the principles of law applicable to such cases. See, also, *Craufurd v. Blackburn,* 17 Md. 49, 77 Am. Dec. 323; *Howell v. Howell,* 166 Md. 531, 171 A. 869; 1 *Bishop, Marriage and Divorce,* sec. 1168-1174; *Commonwealth v. Di Matteo,* 124 Pa. Super. 277, 188 A. 425; *Moore v. Smith,* 178 Miss. 383, 172 So. 317; 10 *Corpus Juris. Sec., Bastards,* sec. 82, p. 170; 7 *American Jurisprudence* 659.

Lord Mansfield in 1777, in the case of *Goodrich v. Moss*, 2. Cowp. 594, said that: "It is a rule founded in decency, morality and policy, that the father or mother shall not be permitted to say, after marriage, that their offspring is spurious." This rule has been adopted in Maryland and in many other states; however, qualifications have been applied to the rule, so rationalizing it that, in this state and elsewhere, the presumption of legitimacy may be overcome when common sense and reason requires that departure.

The unbending observance of the rule has been criticised by Dean Wigmore in his work on *Evidence* (2nd Ed.) vol. 4, page 387, and Lord Langdale in *Hargrave v. Hargrave*, 9 Beav. 553, is the author of limitations above quoted and adopted in *Scanlon v. Walshe, supra*. The trend of modern decisions and text writers, while affirming the general rule, is away from interpreting the presumption as a fixed conclusion.

See Mr. Justice Cardozo's pronouncement in *Re Findlay*, 253 N. Y. 1, 170 N. E. 471, and cases there cited; *Saunders v. Fredette*, 84 N. H. 414, 151 A. 820; *Commonwealth v. Di Matteo, supra*.

We think the rule, if not already established by the decisions in this state, should be, that when non-intercourse is shown to the trial court by clear, satisfactory, and convincing evidence, then the mother should be held competent to testify as to her relations with the accused, and to disclose the identity of the father of her child. To meet this requirement of proof as to non-intercourse between Edna Doney and her husband, Minnie Fuller, the mother of Edna Doney, who lives on the same side of the street and about four doors from her daughter, was called by the State. She testified that when Edna Doney became separated from her husband about three years ago, she came to live with her for a while, after which she went to live with her sister-in-law, Martina Fuller, where she resided until July, 1937. During this time she saw her daughter every now and then and her testimony was to the effect that her daughter's husband during the past

three years had not lived with his wife, and though associated with her she had never seen nor heard of him during that time. Martina Fuller, the sister-in-law, testified that Edna Doney had lived with her from the middle of 1936 until June, 1937, when she went to Harry Hale's to live, and during this time she had never seen Edna Doney's husband though Edna had lived with her day and night without interruption, since the date she came to her. Her husband never came to visit her during that period and in June, 1937, she went to live in the house of Harry Hale. Three close friends and associates of Edna Doney testified that they were with her many times both day and night, and they had not seen nor heard of the husband of Edna Doney during that period. It was also shown that Edna Doney, with the assistance of her mother, sought to discover the whereabouts of her husband, but without success. It was further shown that both Edna Doney and Harry Hale recognized the child as their offspring and provided and cared for it as such. It is rather difficult to perceive how more clear and convincing proof could be offered of the continued separation of this man and wife than here presented. The testimony, from its very nature, is negative in character, as all such testimony must be, but it does carry with it conviction. Those who would best know whether this husband and wife had lived together, or had found an opportunity to do so, testify to a state of facts that certainly establishes the conclusion that they did not and satisfies the rule above enunciated. We think that Edna Doney, in view of this situation, was properly permitted to testify to her frequent sexual relations from January, 1937, to July, 1937, with Harry Hale, and that he was the father of her child. The child was born on the 11th day of November, 1937. Therefore, it must have been conceived about February, 1937, and during the period when it was conclusively shown that intercourse between these parties was occurring.

There is no statutory enactment in this state directly authorizing the husband and wife to testify with respect

to the parentage of a child and to question its legitimacy, and to disturb the policy of the law as above recited; nevertheless the broad provisions of the Code of Public General Laws contained in article 12 would seem to disregard the fundamental grounds upon which the rules above stated are founded, for it is there provided that "any woman" may be required under certain pains and penalties to disclose the father of her bastard child, and all the proceedings provided therein are apparently designed to compel discovery of the identity of the father, and for that purpose to require the mother to testify or give information under oath in that respect, and thus attack the legitimacy of her child. This case does not arise out of a proceeding before a justice of the peace, but upon an indictment. The rule with respect to testimony of the husband and wife, which has been recognized and defined by this court, should not be disturbed, nor does a fair interpretation of the Bastardy Act require it, except that the statute does expressly provide, in article 12, section 5, that the testimony of the mother, taken before the justice of the peace and transmitted to the court, shall be admitted in evidence, should she die prior to the time of the trial.

Except in so far as the statute provides, the same rules as to evidence should prevail whether prosecution originates on indictment or on information before a justice of the peace. It would be unreasonable to hold that a person charged with this crime could be convicted upon testimony differing in character because of the origin of the case and method of procedure, when the crimes are the same and the issues alike. It is further provided by the statute that, in cases tried on appeal, the same proceedings shall be had as in other criminal cases.

In conclusion it should be stated that examination of the Maryland cases above cited will readily disclose that the facts and circumstances there presented to establish non-intercourse were inconclusive and unconvincing. For example in the late case of *Harward v. Harward, supra,* it was shown that the husband and wife were to-

gether on numerous occasions, had slept in the same house, and visited Washington, had been at the races at Havre de Grace, and had generally been with each other at times and places according to their predilections; hence, opportunity for intercourse was apparent. The facts in *Scanlon v. Walshe, supra,* are also inconclusive and insufficient to satisfy the evidential requirements of non-intercourse, so that it was proper in those and other cases under similar circumstances to prohibit the husband or wife from questioning the legitimacy of the child. The testimony in this case, as in *Howell v. Howell, supra,* discloses an entirely different situation in establishing non-intercourse of the husband and wife.

We find no error in the rulings of the trial court in this case and the judgment must be affirmed.

*Judgment affirmed, with costs.*

PARKE, SLOAN, and JOHNSON, JJ., dissent.