## DAYHOFF *v.* STATE

[No. 49, October Term, 1954.]

*Decided December 15, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Theodore F. Brown* for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Donald C. Sponseller, State's Attorney for Carroll County,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence for non-support of an infant. The appellant, Eugene E. Dayhoff, was indicted under Code, (1951), Article 27, Section 96(b), for the crime of unlawfully and without just cause wilfully neglecting to provide for the maintenance and support of his infant child, Kevin E. Dayhoff, aged eight months. The appellant pleaded not guilty and elected a jury trial. The trial judge ordered him to pay to his wife the sum of $10.00 per week for the period of three years for the support of the infant, subject to the further order of the court in the premises.

The State produced at the trial one witness, namely Louise W. Dayhoff, the mother of the child and the wife of the accused. Mrs. Dayhoff testified that she was the wife of the appellant; that the boy child, Kevin, was born to her on September 11, 1953; that the child was living with her; and that her husband had contributed nothing to the support of the child since it was born. She further testified that she and her husband separated on December 26, 1951, that they returned and lived together in April, 1953, and stayed together until September 26, 1953.

On cross-examination she was asked whether the appelland was the father of the child. An objection to the question was sustained by the court. She was further asked whether she wrote a letter, dated September 17, 1953, to "Margaret", which was handed to her for identification. She admitted she wrote that letter. When the defense attempted to offer this letter, in which she stated in effect that the appellant was not the father, an objection to its introduction was sustained. She was further asked whether after the child was born she gave "Jack Gray" as the name of the father of the child. An objection to that question was sustained. The defense also attempted to offer in evidence a letter which she wrote to the State Department of Health which mentioned the name of Jack Gray. An objection to the introduction of that letter was also sustained. A witness, Mr. E. B. Parkinson, called by the defense, was asked: "Whose name did she give as the father of that child?" An objection was sustained to that question. The appellant, when called as a witness, was not permitted to introduce in evidence the aforesaid letter of September 17, 1953, written by Mrs. Dayhoff to "Margaret". The appellant contends that the court erred in these rulings on the evidence.

In the case of *Goodright v. Moss*, 2 Cowpers 591, 98 Eng. Rep. 1258, decided in 1777, it was held by Lord Mansfield that "* * * the law of England is clear, that the declarations of a father or mother, cannot be admitted to bastardize the issue born after marriage. * * * it is a rule, founded in decency, morality, and policy, that they shall not be permitted to say *after marriage,* that they have had *no connection,* and therefore that the offspring is spurious; more especially the mother, who is the offending party." This rule has been consistently referred to in the cases as the Lord Mansfield rule. The appellant relied on a number of out of State cases: *Loudon v. Loudon,* N. J., 168 A. 840; *Lynch v. Rosenberger,* Kan., 249 Pac. 682; *State v. Snyder,* 157 Ohio St. 15, 104 N. E. 2d 169; *People v. Powers,* 340 Ill. App.

201, 91 N. E. 2d 637; *Sayles v. Sayles,* 323 Mass. **66,** 80 N. E. 2d 21; and *New York v. Nelson,* 124 Misc. Rep. 800, 210 N. Y. Sup. 335. In the case of *Loudon v. Loudon, supra,* the New Jersey Court, relying on Professor Wigmore, held that the Lord Mansfield rule was in the first place limited strictly to filiation proceedings and allowed one spouse to testify against the other as to non-access in a divorce action. In *Lynch v. Rosenberger, supra,* it was held in an action for partition that the evidence of the mother that the husband was not the father of the claimant was admissible. This was based on the fact that there was evidence, other than that of the mother, as to non-access. In *State v. Snyder, supra,* the accused was convicted of non-support of his two children. On appeal it was held that the record of a judgment in a divorce case, which held that the defendant was the father of the two children, was not admissible in evidence in the non-support case. The case of *People v. Powers, supra,* involved the charge of non-support of a child. The defendant testified that he did not live with his wife during the period of conception and did not have sexual intercourse with her during said period. Apparently there was no objection to that testimony. However, the court said in that case, in holding that the husband's evidence uncorroborated was not sufficient to overcome the presumption that he was the father of the child: "In this case, defendant by his own breath would bastardize this child and have the court find his wife guilty of infidelity. Even in an uncontested divorce case in this jurisdiction, where the social consequences are less serious, he would be required by the court to produce a corroborative witness. If we accept his contention and further attenuate the presumption of paternity by holding that such unsupported testimony is sufficient, the social consequences can only be to add further to the growing instability and disintegration of family life." The case of *Sayles v. Sayles, supra,* was one for divorce on the ground of adultery. The court there held that testimony that defendant's wife told a witness that her

husband was not the father of the child was admissible and sufficient evidence upon which to grant the husband a divorce for adultery of his wife, without corroboration. The court there also held that under the Lord Mansfield rule the admissions of the wife in the divorce case would be received to prove adultery, but not to prove the illegitimacy of the offspring. It was further said in that case: "It has been said elsewhere that the rule is not limited to any special class of case, but applies to all cases where legitimacy is in issue, be it the main, or only an incidental, issue. *Russell v. Russell*, (1924), A. C. 687, 698, 706, 724, 725; *Commissioner of Public Welfare v. Koehler*, 284 N. Y. 260, 265, 30 N. E. 2d 587; 7 *Am. Jur., Bastards*, s. 21. Compare *Phillips v. Allen*, 2 Allen 453, 455." The case of *New York v. Nelson, supra,* decided December 19, 1924, was one for non-support. It was there held that the Lord Mansfield rule should not prevent the cross-examination of the wife concerning the legitimacy of her unborn child, where the wife as a hostile witness made the fact of her pregnancy an issue in the case. This case apparently did not reach the Court of appeals of New York and the only reason given for not following the Lord Mansfield rule was that it was *dictum* when first stated. In the case of *Commissioner of Public Welfare v. Koehler,* 284 N. Y. 260, 30 N. E. 2d 587, decided November 19, 1940, the Court of Appeals of New York held in adjudging the defendant as the father of the child and directing him to pay for its support, that in the absence of statute "* * * it is well settled that neither husband nor wife are competent to prove non-access during wedlock, whatever may be the form of legal proceedings, or whoever may be the parties thereto." The opinion further pointed out that the New York Legislature had provided that in paternity proceedings, brought in the city of New York, "* * * if the mother is married both she and her husband may testify to non-access."

The Lord Mansfield rule has been applied to criminal prosecutions for non-support and bastardy in a number

of out of State cases, among which are: *Hicks v. State,* Court of Criminal Appeals of Texas, 263 S. W. 291, and *Schmidt v. State,* Neb., 194 N. W. 679. In *Hicks v. State, supra,* the defendant was convicted of deserting his child, born after marriage but begotten before marriage. In affirming the conviction it was held that the law presumed that the husband was the father and that the lips of the parents, as a rule, are sealed on the question of sexual intercourse, so far as such testimony would go to assail the legitimacy of children. In the *Schmidt* case, *supra,* the accused was convicted of wilfully neglecting and refusing to provide for the support and maintenance of his wife and child. The court in that case followed the Lord Mansfield rule that where children are born during the marriage, the presumption of legitimacy cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them, nor are the declarations of such husband or wife competent as bearing on the question where the legitimacy of children born in lawful wedlock is involved. It was further said in that case, quoted from 1 *Jones, Commentaries on Evidence,* Section 97 (a): "Nor does it depend upon the form of action or the parties; on the contrary, it obtains whatever the form of legal proceedings, or whoever may be the parties." It is quite clear that, if the wife would not be permitted to testify to facts which would bastardize her child, her declarations could not be used in evidence to prove the same fact. In *Bassil v. Ford Motor Co.,* 278 Mich. 173, 270 N. W. 258, it was said: "Courts have been uniform in holding that there is a very strong presumption of the legitimacy of a child conceived and born during wedlock. This court has held the presumption is so strong that it cannot be met or overcome by the testimony of either of the parents. * * * Surely if neither parent can testify that a child born in wedlock is illegitimate, the declaration of such parent made out of court would not be admissible. It would be equally contrary to public policy to receive proof of such declaration."

The Lord Mansfield rule has been followed in every case involving legitimacy of children by this Court. In *Hale v. State*, 175 Md. 319, 2 A. 2d 17, decided November 3, 1938, a prosecution for bastardy, the Lord Mansfield rule was set out. In that case, however, it was held that non-access was shown by testimony other than that of the husband and wife and, therefore, that the mother was competent to testify as to her relations with the accused and disclose the identity of the father of her child. In the most recent case, *Hall v. State,* 176 Md. 488, 5 A. 2d 916, decided April 28, 1939, Hall was convicted of the crime of bastardy, being the father of a child born to Naomi Saunders on July 18, 1937. Naomi Saunders had married her husband, Mr. Saunders, on March 25, 1935, and was still married to him in April, 1939, at the time of the hearing in this Court. Naomi Saunders was allowed, over objection, to testify that William Hall was the father of her child, that during September, October and November of 1936 she had sexual intercourse with no other person than Hall, and that Hall contributed to the support of the child. This Court found that apart from the testimony of Naomi Saunders, there was literally no evidence which even tended to prove non-access on the part of the husband, except the mere fact of separation. In reversing the conviction it was held that apart from the evidence of the mother, the evidence was not sufficient to establish non-access, and there was, therefore, error in permitting the mother to testify that she had illicit relations with the defendant and that she had not had sexual relations with her husband. This Court said in that case: "One court may hold that it is indecent to permit the mother of a child to brand it as illegitimate, another, that it is even more indecent to compel a husband to assume the paternity of a child which he and every one who has any knowledge of the facts known is not his child, but the child of another. And so the applicable rule has come to be one of case law and precedent, varying with what is called the policy of the varying jurisdictions in which it is applied. In this State the accepted rule is

that where a child is born of a married woman, neither the husband nor the wife is a competent witness to prove non-access at a time when, according to the laws of nature, the husband could have been the father of the child, and that neither the husband, the wife, nor the paramour will be permitted to give testimony which will bastardize the child until such non-access be first shown (*Craufurd v. Blackburn*, 17 Md. 49; *Scanlon v. Walshe*, 81 Md. 118, 31 A. 498; *Howell v. Howell*, 166 Md. 531, 171 A. 869; *Harward v. Harward*, 173 Md. 339, 196 A. 318; *Hale v. State*, 175 Md. 319, 2 A. 2d 17), but if non-access is shown, either the husband or the wife is competent to testify to any fact other than non-access, even though it tends to establish the illegitimacy of the child. *Halsbury's Laws of England, 'Bastardy and Legitimation,'* sec. 772, note e." The appellant contends in the instant case that silence on the part of the wife does not overcome the presumption of innocence in a criminal case. We must note, however, that both *Hale v. State, supra,* and *Hall v. State, supra,* were criminal cases.

The appellant relies strongly on Code, (1951), Article 89C, the "Support of Dependents" Act, and particularly on Section 3 of that Act which provides: "The remedies herein provided are in addition to and not in substitution for other remedies." That Act is divided into two parts, one dealing with "Criminal Enforcement" and the other with "Civil Enforcement". By Section 18 of that Act, under "Civil Enforcement", it is provided: "Evidence of Husband and Wife. Laws attaching a privilege against the disclosure of communications between husband and wife are inapplicable to proceedings under this Article. Husband and wife are competent witnesses (and may be compelled) to testify to any relevant matter, including marriage and parentage." The appellant contends that this section expressly repeals the Lord Mansfield rule in non-support cases, and also applies to criminal as well as civil enforcement. The only provision of Article 89C, *supra,* under "Criminal Enforcement" is that providing for the extradition of persons charged with non-support.

It was specifically held in the case of *State v. James,* 203 Md. 113, 100 A. 2d 12, that Article 89C, Section 3, *supra,* now relied on by the appellant, was not substituted as a remedy for the criminal prosecution sought by the State under Article 27, Section 96(b), *supra,* under which the appellant here was convicted. Compare *Commonwealth of Pennsylvania v. Warren,* 204 Md. 467, 105 A. 2d 488. The constitutionality of Article 89C, *supra,* on the question whether the civil enforcement for non-support can be different from the criminal enforcement is not raised in the record before this Court. Compare *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280, 74 S. Ct. 280, 346 U. S. 545. Article, *Maryland Law Review,* Vol. XIV, No. 3, page 299. As was said in *Jeffers v. State,* 203 Md. 227, 230, 100 A. 2d 10: "It is an almost undeviating rule of the courts, both State and Federal, that a constitutional question will not be decided except when the necessity for such decision arises in the record before the court." The statute, Code, (1951), Article 12, Section 1, compels a woman, either pregnant with or having been delivered of a bastard child, to disclose under oath the identity of the father of that child. In *Hall v. State, supra,* it was held that that statute did not conflict with the Lord Mansfield rule. It was there said: "It is undesirable however that there be different rules of evidence controlling the proof of the same fact in different proceedings, so what might be proved in a criminal proceeding could not be proved in a civil proceeding, and if any reasonable interpretation of the statute will avoid that result it would be adopted. It is apparent that the statement required of the mother by the statute is accusatory, that it forms no part of the evidence adduced at the trial of the charge, and that the statute itself makes no reference to the nature or quality of the evidence to be given at any trial of the charge made by the mother, nor to the competence of witnesses who may be called at any such trial." Certainly, if this statute, Article 12, Section 1, *supra,* does not conflict with the Lord Mansfield rule, Article 89C, *supra,* for the reasons

above given, under no reasonable interpretation, can so conflict.

In the instant case there was certainly no testimony of non-access other than that of the mother and extra judicial admissions made by her which were rightly not admitted in evidence. The mother did not testify that her husband did not have access to her during the period of conception, but that they were separated during that period. Unless the previous decisions of this Court are to be overruled, under the Lord Mansfield rule the trial judge was correct in his rulings on the evidence. The Legislature, of course, could repeal this rule. It has not seen fit to do so.

The appellant further contends that his motion for a judgment *N. O. V.* or for a new trial should have been granted. The State, on the other hand, contends that the appellant, having failed to make a motion for a directed verdict before the jury retired, is precluded from questioning the sufficiency of the evidence on appeal and relies on Rule 5A, *Criminal Rules of Practice and Procedure;* Code, (1951), Article 27, Section 700; and *Leet v. State,* 203 Md. 285, 292, 100 A. 2d 789. However, the case now before this Court is essentially one involving the admissibility of evidence. Under the presumption created by the Lord Mansfield rule that the child born during wedlock was legitimate and that the mother's testimony is not admissible to show that it was illegitimate, here there is no evidence to the contrary. It was further said in *Hall v. State, supra,* at page 498: "For, except for the fact that the husband and wife were living apart, which is not sufficient, (*Morris v. Davies,* 1837, 5 Cl. & Fin. 163, 2 *Halsbury's Laws of England,* 561, note r), there was no evidence of non-access other than that of the wife." It was, of course, there held that the wife's testimony was not admissible. The judgment and sentence will be affirmed.

*Judgment affirmed, with costs.*

BRUNE, C. J., dissents.