## BRADLEY ARLINGTON AVEY *v.* STATE OF MARYLAND

[No. 205, September Term, 1969.]

*Decided March 31, 1970.*

228

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Karl G. Feissner* (*William L. Kaplan, Thomas P. Smith, Fred R. Joseph,* and *Andrew E. Greenwald* on the brief) for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On October 21, 1965, Bradley Arlington Avey, the appellant, was convicted on two charges of assault with intent to murder two police officers who interrupted a storehouse breaking. He was also convicted of the breaking. In *Avey v. State,* 1 Md. App. 178, 228 A. 2d 614, we affirmed the convictions but the Court of Appeals granted certiorari to consider the trial court's instructions as to the effect of drunkenness on the ability of the accused to form the specific intent required for these crimes, and reversed the convictions, *Avey v. State,* 249 Md. 385, 240

A. 2d 107. Avey was again convicted of the two charges of assault with intent to murder and was sentenced to consecutive 12 year terms, after a jury trial in the Circuit Court for Prince George's County. The testimony at the second trial was not as complete as at the first trial, but the essential facts are as set out in the prior reported opinions. We will not repeat them here, except as necessary to discuss the particular issues raised.

Avey raises seven contentions:

I "The Trial Court Erred In Failing To Grant A Bifurcated Trial On The Issues Of Not Guilty And Not Guilty By Reason Of Insanity."

Prior to trial, Avey made a motion for a bifurcated trial before separate juries as to the issue of "not guilty" and the issue of "insanity at the time of the crime." At the argument thereon, he requested a "sequential" trial asking that a jury be empaneled to first determine the guilt or innocence, and thereafter, to determine the question of insanity. He alleges that the defense of "I didn't do it" was inconsistent with "I didn't have mental capacity at the time." He relies on *Holmes v. United States*, 363 F. 2d 281 (CA D.C.) and *Contee v. United States*, 410 F. 2d 249 (CA D.C.).

In *Tull v. State*, 230 Md. 596, 601, 188 A. 2d 150, the Court of Appeals construed Md. Rule 720 and Md. Code, Art. 59, § 7, as then in effect, and held the issues should be tried simultaneously. In *Strawderman v. State*, 4 Md. App. 689, 244 A. 2d 888, we held there was no change by reason of the new Maryland legislation on insanity. See Md. Code, Art. 59, § 9. In *Sweeney v. State*, 6 Md. App. 431, 252 A. 2d 9, we indicated we were not persuaded by the two District of Columbia cases, *Holmes v. United States, supra,* and *Contee v. United States, supra,* that it was necessary to have separate determination of these two questions anymore than an accused should be permitted to have one trial in which he denies that he committed a homicide, and a second one, in which he admits he did it but tenders an issue of self-defense:

or to defend a rape case by denying the act, then have a separate trial saying that the act was performed with consent of the victim; or to have one trial in which he denies that he committed a crime requiring a specific intent, and then a separate trial as to whether or not he was so intoxicated as to be deprived of his capacity to form the requisite intent.[1] Furthermore, we note that the issues of not guilty and not guilty by reason of insanity are not necessarily inconsistent as are the examples we have cited, yet we are aware of no authority that requires separate trials in such other cases. We hold that an accused is not entitled to separate trials on the issues of insanity or not guilty, whether before the same jury, or separate juries. We cannot permit criminal trials to become so complex without compelling reasons, which we fail to see here. If an accused wishes to cite conduct at the time of the crime to support an insanity plea, he must admit the facts, just as he must admit the facts if he wishes to plead consent in a rape case.

II "The Trial Court Erred In Refusing To Dismiss Appellant's Grand Jury Indictments And In Denying Appellant's Motion To Challenge The Array."

Avey alleges that the following two sections of Md. Code, Art. 51 are unconstitutional on their face: § 1:

"No person shall be selected and placed upon a panel as a juror who shall not have arrived at the age of twenty-five years."

And Md. Code, Art. 51, § 9:

". . . and in Prince George's County a panel to consist of not less than four hundred (400) names, the names to be fairly and impartially selected of the age aforesaid by the said judges,

---

1. The defenses of entrapment, see *Simmons v. State*, 8 Md. App. 355, 259 A. 2d 814, as well as many other defenses, are inconsistent with a denial of the act.

with special reference to the intelligence, sobriety and integrity of such persons. . . ."

Since the instant case was argued, the Supreme Court of the United States, on January 19, 1970, filed an opinion in *Carter v. Jury Commission of Greene County*, 396 U. S. 320, 90 S. Ct. 518, 24 L.Ed.2d 549, which completely disposed of this issue:

> "On the merits, the appellants argue that the District Court erred in refusing to invalidate the Alabama statute requiring the jury commissioners to select for jury service those persons who are 'generally reputed to be honest and intelligent. . . and . . . esteemed in the community for their integrity, good character and sound judgment. . . .' Ala. Code, Tit. 30, § 21 (Supp. 1967)."
>
> * * *
>
> "While there is force in what the appellants say, we cannot agree that § 21 is irredeemably invalid on its face. It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. 'Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.'
>
> "Statutory provisions such as those found in § 21 are not peculiar to Alabama, nor to any particular region of the country. Nearly every State requires that its jurors be citizens of the United States, residents of the locality, of a

specified minimum age, and able to understand English. Many of the States require that jurors be of 'good character' or the like; some, that they be 'intelligent' or 'well informed.'

"Provisions of similar breadth have been challenged here and sustained before. In *Franklin v. South Carolina,* the Court rejected a similar attack upon a jury-selection statute alleged by the plaintiff in error to have conferred arbitrary power upon the jury commissioners. The pertinent law there provided that the commissioners should 'prepare a list of such qualified electors under the provisions of the constitution, between the ages of twenty-one and sixty-five years, and of good moral character, of their respective counties as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions, which list shall include not less than one from every three of such qualified electors . . . .' In upholding the validity of these standards, the Court said:

'We do not think there is anything in this provision of the statute having the effect to deny rights secured by the Federal Constitution. . . . There is nothing in this statute which discriminates against individuals on account of race or color or previous condition, or which subjects such persons to any other or different treatment than other electors who may be qualified to serve as jurors. The statute simply provides for an exercise of judgment in attempting to secure competent jurors of proper qualifications.'

"Again, in *Smith v. Texas,* we dealt with a statute leaving a wide range of choice to the commissioners. Yet we expressly upheld the validity of the law. The statutory scheme was not in itself unfair; it was 'capable of being carried

out with no racial discrimination whatsoever.'

"No less can be said of the statutory standards attacked in the present case. Despite the overwhelming proof the appellants have adduced in support of their claim that the jury clerk and commissioners have abused the discretion that Alabama law confers on them in the preparation of the jury roll, we cannot say that § 21 is necessarily and under all circumstances invalid."

III "The Trial Court Erred In Instructing The Jury That They Were The Judges Of The Law As Well As Of The Facts."

Avey contends that Art. XV, § 5 of the Maryland Constitution providing that "in the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact . . . ." violates the due process and equal protection clause of the Fourteenth Amendment of the Constitution of the United States. The same argument was made in *Avey v. State, supra,* and was rejected by this Court. In *Lewis v. State,* 2 Md. App. 678, 685, 237 A. 2d 73, we considered the question in more detail and again rejected the contention. We reiterated the holding in *Sizemore v. State,* 5 Md. App. 507, 248 A. 2d 417, *Phillips v. State,* 6 Md. App. 56, 250 A. 2d 111, and *Holbrook v. State,* 6 Md. App. 265, 250 A. 2d 904. Although there is some logical argument to support the appellant's argument, there is a dearth of authority to support it. He cites only *United States v. Battiste,* Fed. Cases No. 14, 545 (1835) (24 Fed. Cases 1042, 1043). We think the sparseness of authority to support the argument indicates that the logic is more academic than real, i.e. that this argument is supported more by academic arguments than by practical ones, and if Maryland desires to continue its quaint colonial custom, there is no constitutional reason why it should not do so. The life of the law is experience not logic.

IV "The Trial Court Erred In Refusing To Strike

The Order Of Court Allowing The State To Peruse The Records Of Clifton T. Perkins State Hospital."

After Avey filed a plea raising the defense of insanity under the new test set forth in Md. Code, Art. 59, §§ 9-12 (Effective June 1, 1967), the trial court, pursuant to § 9 thereof, ordered that Avey be sent to the Department of Mental Hygiene for reexamination. Thereafter, the State's Attorney for Prince George's County alleged that the Department of Mental Hygiene would not permit him to review the records without an order of court, and that he needed to make such an inspection in order to prepare the case for trial; whereupon, the trial court signed an *ex parte* order permitting such an examination. Avey, upon learning of the signing of the order, moved that the order be stricken, claiming it was a violation of several constitutional rights including the Fifth Amendment of the Constitution of the United States. Although his brief does not make clear whether or not he also contends on appeal the order violated Md. Code, Art. 35, § 13A which, with certain exceptions, makes communications between a patient and a psychiatrist privileged, his reply brief makes clear the only point now pursued is that the order violated his right to avoid self-incrimination under the Fifth Amendment of the Constitution of the United States and Art. 22 of the Maryland Constitution. He alleged that the order violated the *spirit* of *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 and *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 citing *Shepard v. Bowe,* 442 P. 2d 238 (Oregon, 1968). There is no need for us to discuss the application of any of the cases, either with a view towards their literal or spiritual effect. No principle of constitutional construction is better established than that a court will not pass upon such question unless it is clearly presented by the record. Citation of authority seems hardly necessary; see, however, *Dayhoff v. State,* 206 Md. 25, 109 A. 2d 760, *Wethington v. State,* 7 Md. App. 79, 253 A. 2d 523. Avey does not point to

any evidence or information which the State's Attorney gleaned from perusing said records that would be helpful to him on a trial on the issue of guilt or innocence. Reference to *Avey v. State*, 1 Md. App. 178, 228 A. 2d 614 discloses that at the prior trial of this case, the defense produced one psychiatrist who testified that Avey was insane at the time of the offense, and that at one time the state's psychiatrist was of a similar opinion, which he changed after further examinations. With this background, it seems apparent the State's Attorney quite legitimately wanted to make an examination of whatever records were available at the hospital in order that he could be thoroughly familiar with any evidence that would likely be produced pertaining to the issue of insanity.[2] In view of the thoroughness in which the facts were brought out at the prior trial, by both the State and the defense, it seems most unlikely the State's Attorney could have gleaned any helpful information on the issue of guilt or innocence. Since no improper use of the records was shown, we reject the contention.

V "The Trial Court Erred In Failing To Suppress All Evidence Obtained As A Result Of An Illegal Arrest."

This question was raised in the prior appeal and we disposed of it in the following manner: *Avey v. State, supra,* 1 Md. App. 178, 185, 228 A. 2d 614:

"The trial court found that the arrest did not occur until after Avey had voluntarily gone to the Air Police Operations Office and voluntarily gone to the Prince George's County Hospital for treatment. There is ample evidence to support the finding. After the bullet wounds were observed, no one could contend that the officers lacked reasonable grounds to believe a felony had been committed and that Avey was the felon. We hold that after Detective Ross observed the

---

2. The record discloses Avey's counsel had access to the records.

hole in the left glove and remembered that Avey had held his hand between his knees enroute to the Air Police Operations Office, there was ample grounds for an arrest at any time thereafter, if not before, *McChan v. State,* 238 Md. 149, 207 A. 2d 632; *Hewitt v. State,* 242 Md. 111, 218 A. 2d 19."

The evidence offered at the second trial on the issue of illegal arrest, however, was not as complete as that before the court in the earlier trial. After the court had heard, out of the presence of the jury, the testimony of one police officer, he was requested to rule on the legality of the arrest which he did in the following manner:

"The Court determines from facts and evidence I have heard the following facts: The Court determines that Detective Ross went to the Air Police Station at Andrews Air Force Base, and upon his arrival there, after being directed to that by his superior officer, found a person, who in the courtroom he has identified as the individual who was at the Texaco filling station within the confines of the U. S. Air Force Base, Andrews Air Force Base, in the custody of one Sergeant Lynch, or at least being at this Texaco filling station on the base, and that he accompanied the Air Policeman Lynch to the Air Police headquarters, and while there he advised the defendant of his right to remain silent, and he advised him he had an opportunity to call an attorney, and as I understand the testimony that was said not once but twice, again when he was in the room with him alone.

"The Court observes he had observed him favoring his left extremity, and in addition thereto he observed he had on only one glove, and, an investigation disclosed that his left hand covered with the glove had what the police officer thought was a bullet wound.

"In addition thereto, the officer knew in fact that a crime had been committed in the vicinity of the Air Base, wherein two officers were shot.

"Therefore, the Court concludes from this information, and the Court having no testimony of anybody for the purpose of this objection but Officer Ross, so the Court has got to accept his testimony, the Court determines that there is sufficient information and evidence here on the facts that I have heard that there was ample grounds for him doing what he did.

"Now, the Court is not at this time ruling that he, in fact, was arrested, but the Court is saying that he had sufficient evidence that he had reasonable grounds to believe that a felony had been committed and that Avey very well could be the person who committed that felony.

"Therefore, the Court would overrule the objection from the evidence that I have."

Counsel requested permission to argue the point further after which the court further found:

"The Court is ruling and adopting the facts I set forth in my ruling before you gentlemen argued this.

"I would only reiterate that the testimony I have today is that he was in the custody of the Air Police, for what reason? Without being able to justify his presence on the Air Base at this hour in the morning.

"As to the investigation, I know of no law that says you can't investigate or make some interrogatories, if you have probable cause to believe the person you are dealing with may have committed, and you have actual knowledge of a fact that a felony may have been committed. So, I would say that the elements of

probable cause are here, a crime had been committed, the officer knew it, he was pursuing an investigation, someone directed him to go and take custody. I will assure you that he wasn't going to take this man away from the Air Police until such time as something further was done."

The record discloses, unlike the testimony at the prior trial, there was no evidence that the officer observed the hole in the left glove or that Avey had held his hands between the knees while enroute to the Operations Office. There was testimony, however, he was observed "favoring" his left arm and that the officer noted that he had only one glove thereon. In his reply brief, Avey makes clear he contests the arrest primarily on the basis that Avey was arrested at the time he was taken from the Texaco station. The trial judge found, however, that he was at that time in the custody of the Air Force Sergeant because he had been unable to give a proper explanation as to his presence on the base; and there is evidence in the record to support the finding which we must, under these circumstances, accept. There was evidence, however, that Detective Ross pulled down Avey's glove to observe the bullet wound which would, in the absence of facts justifying an arrest at that time, have been an unreasonable search. Prior thereto, the officer had ample evidence to believe a felony had been committed, that the felon was in the area, and possibly wounded, and at least one of the several descriptions which had been broadcasted, generally matched the description of Avey. We think this information, coupled with observations concerning the single glove and the "favoring" of the left hand, justified the trial judge's admission of the evidence, of the officer's observations under the glove, and the clothing which Avey was wearing at that time. In his brief and in his reply brief, appellant refers to evidence which he did not present to the judge until after the trial judge was requested to make a ruling as to the legality of the search and seizure. We

have ignored this additional evidence because counsel failed to present it to the trial judge at the proper time.

VI "The Trial Court Erred In Charging The Jury To The Test For Insanity."

As part of his instructions on the issue of insanity, the trial judge used the language of Md. Code, Art. 59, § 9 as follows:

> " 'The test of responsibility for criminal conduct as set forth in Maryland is that:
>
> " 'A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. The terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.' "

Avey excepted thereto pointing out that the terms "mental disease or defect", "substantial capacity", and "appreciate and/or conform", were not defined in the instructions. He did not advise the trial court as to how, in his opinion, the terms should be defined and did not in his brief suggest to us how the terms should be defined. In the reply brief, however, he does cite several District of Columbia cases concluding with *King v. United States,* 372 F. 2d 383, 125 U. S. App. D. C. 318, which indicates a jury should be instructed that mental disease or defect "includes any abnormal condition of the mind substantially affecting mental or emotional processes and substantially impairing behavior controls." We do not think the giving of this information to the jury would have been particularly helpful. We think the language of the statute and the trial judge are sufficiently clear, when coupled by expert testimony of the psychiatrists, for the

jury to make a proper determination of the issue involved. Although we have not heretofore ruled as to jury instructions, we have considered § 9 of Art. 59 in several cases, the most recent being *Millard v. State,* 8 Md. App. 419, 261 A. 2d 227 wherein we held only competent medical testimony is sufficient to raise a jury question, relying upon our earlier cases of *Saul v. State,* 6 Md. App. 540, 252 A. 2d 282 and *Greenleaf v. State,* 7 Md. App. 575, 256 A. 2d 552. These cases and others cited therein indicate our view, these terms do not need further clarification.

VII The Trial Court Erred In Not Granting Appellant's Motion For Acquittal.

Finally, Avey contends the trial court erred in the failure to grant his motion to acquit. He claims the motion should have been granted because (1) the evidence showed he was insane as a matter of law or (2) the evidence showed he was so intoxicated as to be unable to form the requisite intent to commit the crime of assault with intent to murder or (3) the evidence failed to show that he shot at the two officers—particularly at Officer Blandford; he suggests the officers shot each other.

(1) In *Avey v. State, supra,* we answered the identical question as to insanity by citing the familiar rule that the trial judge cannot grant a motion to acquit if there is any credible evidence to support a verdict of sanity. There, as here, Dr. John M. Hamilton testified Avey was sane at the time of the crime. At the second trial he gave the same testimony using the test now required by Md. Code, Art. 59, § 9; the defense testimony was contra, and thus a jury question was presented.

(2) The Court of Appeals in *Avey v. State, supra,* held that voluntary drunkenness could be a defense to the crime of assault with intent to murder, if the drunkenness were sufficient to deprive the accused of his ability to form a specific intent to murder, and reversed the conviction because the trial judge had not given the jury sufficiently clear instructions on the question. The com-

plaint here does not relate to the instructions but the failure to grant a motion to acquit. It is alleged the evidence shows Avey was intoxicated to the requisite degree and reasonable men could not differ on the question. Although both psychiatrists gave the opinion that Avey was intoxicated at the time of the crime, one, Dr. Hamilton, gave the opinion he was responsible at the time for his criminal acts. This testimony was sufficient to present a jury question on the issue as to drunkenness causing insanity. See 8 A.L.R.3d 1265-67.

In *Michael v. State,* 1 Md. App. 243, 248, 229 A. 2d 145, we reviewed the authorities as to drunkenness with relation to specific intent to commit a crime and stated:

> "The accused must do more than simply raise the issue of drunkenness to establish a defense, *State v. French, supra.* But cf. *Edwards v. United States,* 172 F. 2d 884 (D. C. Cir. 1949); *Womack v. United States,* 336 F. 2d 959 (D. C. Cir. 1964). He must persuade the triers of fact that, under the circumstances, he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted. To establish a valid defense, the appellant must show that he was so intoxicated that he was robbed of his mental faculties, and he will be considered criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing. . . ." (Authorities omitted)

There was evidence from which the jury could find that Avey shot and hit two police officers while he himself was under fire; he ran from the building and eluded other police officers waiting for him at the door; he avoided a police dragnet for several hours thereafter. We think this evidence was sufficient to raise a jury question as to whether or not he was so intoxicated as to be unable to form a specific intent to murder.

(3) The evidence shows Lieutenant Thornberry discovered the glass in the front door of a delicatessen broken. He and another officer, Sergeant Blandford, entered the building. After they turned on the lights in the delicatessen, they observed Avey behind a door to the men's room. The officers ordered him to come out. When he appeared at the open door of the men's room, he was about ten feet from each of the officers who were about five feet apart; Blandford was to the right of Thornberry.

Lieutenant Thornberry testified as follows:

"A. When I ordered the defendant out from behind the door, he stepped around from behind the door.

"The first words he said, 'Okay, copper, let's see how good you are. Kill me.'

"He had a .38 in his hand, pointed at me. I could see it was a revolver because I could see the shells in the chambers, the copper-coated jackets on it.

"And I fired double action. He fired. He struck me in the arm. Rapid firing I fired. I saw Corporal Blandford — Sergeant Blandford going down on his knees.

"Then the next thing I know I was — felt a terrific impact in the side of my head. I went down on my left shoulder, rolled over on the floor, looked up. The defendant was standing over me, standing beside me."

\* \* \*

"A. When I looked up he was standing right beside me, looking right down on top of me, his gun pointed down, and the gun went off. I fired up. When he fired I fired up. I felt the sting and a pain in my side.

"Q. Do you recall what happened to Sergeant Blandford during this period of time, if you know?

"A. All I remember seeing him, when he went

down on his knees, and then at that time, where he went from there on I didn't see."

Sergeant Thomas R. Blandford testified as follows:

"A. The person who was behind the door stepped out from behind the door into the doorway and stated, 'All right, let's see how good you are.'

"And at that time the firing started. And I remember firing one shot and feeling a blow to my head and going to my knees —

"Q. Excuse me. Go ahead.

"A. — and seeing Lieutenant Thornberry go down.

"The next thing I remember I was in the hall, the aisle-way of the store, hearing a clicking noise, hearing someone saying, 'Hold it.'

"I looked around and saw the Sergeant behind me with his weapon, heard a clicking, apparently his gun was empty."

The contention that there was no evidence Avey shot at Officer Thornberry is obviously frivolous. Although it is true neither of the officers testified Avey was the one who shot Sergeant Blandford, we think the jury could form a rational inference from the testimony that Avey assaulted both officers. They were only five feet apart when he began firing; Sergeant Blandford was to the right of Lieutenant Thornberry and his, Blandford's, head wound was on the right side. It would be improbable that this wound was caused by Officer Thornberry. It would also be improbable that Avey, under these conditions, would shoot several times at one of his attackers and not once at the other.

*Judgments affirmed.*