## COKIE ASBURY GREENLEAF *v.* STATE OF MARYLAND

[No. 492, September Term, 1968.]

*Decided August 19, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Samuel M. Shapiro* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Deputy State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty of murder in the second degree by a jury in the Circuit Court for Prince George's County and was thereafter sentenced by the court to twelve years under the jurisdiction of the Department of Correction. He contends on this appeal that the lower court erred "by excluding the medical testimony on the defendant's sanity from the jury." [1]

The evidence adduced at the trial showed that appellant shot and killed his wife in their home with a ten gauge shotgun. In support of his plea of not guilty by reason of insanity filed pursuant to Maryland Code, Article 59, Section 9,[2] the appellant called Dr. Ido Adamo, a staff psychiatrist at Perkins State Hospital, to testify on his behalf. Out of the presence of the jury, Dr. Adamo testified that while he did not personally examine the ap-

---

1. During oral argument of this case, appellant abandoned other contentions raised in his brief.

2. "A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

pellant, he did attend a staff conference on September 6, 1968 at which appellant was interviewed. He testified that appellant had an I.Q. of 89 (dull normal); that he was a deprived individual; that he was addicted to drugs; that he had some suggestion of organic brain damage; that he had some memory impairment; that presumably he suffered from arteriosclerosis; and that he lacked impulse control. Dr. Adamo further testified that there were no signs either of psychosis or neurosis, and that while he was unable to form an opinion as to whether appellant was insane under the applicable test of Article 59, Section 9, he "leaned" toward a finding that appellant was legally responsible—a conclusion which Dr. Adamo acknowledged was held by the other staff psychiatrists. On this evidence, the trial judge ruled as a matter of law that there was no evidence of insanity legally sufficient to permit the issue to go to the jury.

Appellant urges that the trial judge erroneously determined that there had to be expert testimony, based on reasonable medical certainty, that he was insane before the jury could be permitted to consider the question. He maintains that such a test is too severe, and that the jury should have been permitted to consider the question of his sanity based on the collective substance of Dr. Adamo's testimony, since the proper test is whether such testimony raised a doubt in the minds of reasonable men.

In *Strawderman v. State,* 4 Md. App. 689, 698, we held that when a plea has been filed in writing alleging that the accused was insane at the time of the commission of the alleged offense, the court should determine preliminarily "whether the proof adduced in support thereof is sufficient to raise a doubt as to the sanity of the accused, as defined, in the minds of reasonable men." In *Saul v. State,* 6 Md. App. 540, 549, we noted that under Section 9 (a) of Article 59, the test of the responsibility for criminal conduct is predicated upon "mental disease or defect," the existence of which "is first and foremost a medical problem." We there held that an opinion as to

the ultimate fact—whether or not the accused is insane under the test prescribed by Section 9(a) — must be reached by a medical diagnosis and must therefore be made by medically trained psychiatrists to be admissible in evidence. We think it plain that any such opinion should be predicated on reasonable medical certainty and to constitute "proof" of insanity sufficient to raise a doubt in the minds of reasonable men, competent medical evidence must ordinarily be adduced to the positive effect that the accused, as a result of mental disease or defect, lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Evidence of some undefined mental disorder or instability is, therefore, insufficient proof to overcome the presumption of sanity. *Jenkins v. State,* 238 Md. 451; *Bradford v. State,* 234 Md. 505.

In view of these principles, we think it too clear to require discussion that appellant adduced no proof of insanity legally sufficient to rebut the presumption of sanity, and permit the case to go to the jury. See also *Turner v. State,* 5 Md. App. 584; *Rozzell v. State,* 5 Md. App. 167; *McCracken v. State,* 2 Md. App. 716; *Bergin v. State,* 1 Md. App. 74.

*Judgment affirmed.*