## ELIZABETH ADELE LIST *v.* STATE
## OF MARYLAND

[No. 799, September Term, 1972.]

*Decided August 10, 1973.*

The cause was submitted on briefs to ORTH, C. J., and MOYLAN and CARTER, JJ.

Submitted by *Henry C. Engel, Jr., District Public Defender,* and *Stephen A. Tarrant* for appellant.

Submitted by *Francis B. Burch, Attorney General, David B. Allen, Assistant Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Peter C. Cobb, Assistant State's Attorney for Harford County,* for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Elizabeth Adele List, was charged with wilfully and maliciously setting fire to and burning the Bel Air Diner. She was found not guilty by reason of insanity at

the time of the alleged offense. The trial was before Judge
Albert P. Close, sitting non-jury in the Circuit Court for
Harford County. Following the verdict the court committed
the appellant to the Department of Mental Hygiene for
examination and evaluation pursuant to the provisions of
Md. Code, Art. 59, § 27. She contends that : (1) the evidence
was legally insufficient to justify a preliminary finding that
she was guilty of the offense charged if she was sane at the
time it was committed; (2) she should have been allowed to
strike and/or withdraw the plea made on her behalf of not
guilty by reason of insanity; and (3) the evidence was legally
insufficient to establish her insanity at the time of the
offense.

The State's evidence showed that on April 17, 1972, at
about 3 p.m., a woman wearing a "floppy brimmed hat", tan
colored trench coat with an American flag attached to the
sleeve, light blue colored slacks, and moccasins entered the
Bel Air Diner. After she entered, she went into the ladies
rest room. Upon coming from the rest room she proceeded to
the counter area where she was served. While sitting at the
counter, she became annoyed because of the loud tones
coming from the juke box, which was directly in front of her,
and requested one of the diner employees to reduce the
volume. The employee advised her she could not do so. The
woman became further annoyed when a customer seated at
the far end of the counter began staring at her. Ultimately
she went over to him and told him to stop staring at her.
When she returned to her seat, she requested the diner
employee to turn off the juke box. The employee again
advised her she could not interfere with the machine. At this
point the woman became very upset and nervous and again
entered the ladies rest room. After remaining in the rest
room for a short time she came out "very fast" and locked
the door behind her. She then went directly out of the diner.
None of the employees in the diner were able to get a
sufficient look at the woman's face to be able to identify her.
Her actions were so noticeably suspicious as to cause one of
the employees to check the coat rack immediately after the
woman left the diner to see if the employee's coat was still

there. No one entered the ladies rest room after the woman in the "floppy brimmed hat" entered it the second time until the odor of smoke was detected in the dining area a short time thereafter. At this time the employees investigated and determined that the smoke was coming from the ladies rest room. When the door of the rest room was finally kicked open, the room was found to be full of smoke. It appeared that the fire had started in a plastic waste basket inside the rest room.

During the time the woman was in the diner, she examined a magazine which, in her excitement, she left when she departed. The magazine had the name and address of Mrs. Minerva Masincup printed on the front.

Soon after the fire was discovered an investigator from the Fire Marshall's office arrived on the scene. His qualification as an expert in the investigation of suspected arsons was conceded. He testified that his investigation showed the fire orginated in the plastic waste basket located directly against a wooden partition. The damage was slight but there was a "charring of the partition" and considerable smoke damage inside the ladies rest room and the adjoining dining area. The only source of the fire that he could ascertain was a burned package of paper matches found among the remains inside the waste basket. There were no single burned matches or cigarette butts found in the waste basket. or in the room. The investigator stated it was his opinion that the package of burned paper matches had been ignited by someone and then purposely thrown into combustible material inside the waste basket. He further said that although it was possible that the matches could have been accidently dropped in the basket, he could not conceive how the package could have become ignited unless someone had purposely done so.

Promptly after the magazine with Mrs. Masincup's name on it was turned over to the investigator, he contacted her. As a result of this contact, the appellant was arrested. She was seen by the investigator on the day after the fire. His description of the clothes worn by her at that time

corresponded to the descriptions given by the diner employees.

Mrs. Masincup testified that she had seen the appellant at the Methodist Church in Aberdeen four days before the fire. At that time Mrs. Masincup gave the appellant a magazine with Mrs. Masincup's name and address stamped on the front and told her to keep it. Mrs. Masincup identified the magazine which the woman had left in the Bel Air Diner as the magazine she had given to the appellant on April 13th. Her description of the clothing worn by the appellant when she saw her at the church also corresponded to the descriptions related by the employees of the diner.

The appellant testified that she worked with the Ecumenical Council and at the time of the incident was in the Bel Air area for the purpose of visiting clergymen. She denied accepting a magazine from Mrs. Masincup or that she had ever seen her prior to the trial. She also denied being in the Bel Air Diner at any time. She further stated she had never owned a trench coat or a "floppy brimmed hat".

Reverend Peterson, the pastor of a church near Bel Air, testified as a defense witness. He stated that the appellant visited him at his office on the afternoon of the fire. He said she left about 5 p.m. and that he could not say the exact time of her arrival but estimated that her visit lasted less than two hours.

Richard Kramer, the former husband of the appellant, testified for the State in rebuttal. He said that the appellant had come to his home during the week immediately preceding the fire to visit with their children. His description of the clothing she was wearing at that time also corresponded to the descriptions given by the employees of the diner.

I

## SUFFICIENCY OF THE EVIDENCE TO ESTABLISH GUILT IF APPELLANT WAS SANE AT THE TIME

In speaking of the proof necessary to establish the *corpus*

*delicti* of the crime of arson, this Court said in *Fulford v. State*, 8 Md. App. 270, 273, 259 A. 2d 551:

> "To establish the *corpus delicti* of the statutory crime of wilfully and maliciously burning a school [building] it need only be shown that a fire did occur, that there was a burning of the building, and that the fire was wilfully and maliciously set. * * *"

See also *Butina v. State*, 4 Md. App. 312, 316-317, 242 A. 2d 819. In *Hughes v. State*, 6 Md. App. 389, 396, 251 A. 2d 373, we further said in regard to this subject:

> "Proof of the *corpus delicti* by circumstantial evidence, to be legally sufficient, need not exclude every possible theory other than that the fire was wilfully and maliciously set. *Nichols v. State*, 5 Md. App. 340 [247 A. 2d 722]. And equally clear is the principle that no greater degree of certainty is required when the evidence is circumstantial rather than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt that the fire was wilfully and maliciously set. * * *"

The direct evidence of the State clearly shows that the fire did occur and that the building was burned.[1] Applying the rationale and holdings of *Hughes, supra* and *Fulford, supra* to the circumstantial evidence of the State, we conclude that the trial court was not clearly in error in finding that the woman in the "floppy brimmed hat" wilfully and maliciously set fire to the diner.

We further conclude that the State's evidence relevant to the appellant's identity, if believed, was patently sufficient to establish that the appellant was the woman in the "floppy brimmed hat" who was in the diner immediately preceding

---

1. In *Fulford v. State, supra* at 274, we held that "if there is the slightest burning of any part of the building, the offense [arson] is completed. *Perkins on Criminal Law*, pp. 176-177." In *Fulford,* we held that the burning off of the paint of a metal window frame was sufficient.

the fire. The trial judge did not believe the exculpatory testimony of the appellant to the effect that she was never in the diner and he was not required to do so. See *Williams v. State*, 11 Md. App. 350, 354, 274 A. 2d 403.

We therefore hold that the trial court was not clearly in error in finding from the total evidence that the appellant was guilty of a violation of Md. Code, Art. 27, § 7 (arson), if she was sane at the time of the occurrence.

## II

### STRIKING AND/OR WITHDRAWAL OF INSANITY PLEA

Soon after the indictment, defense counsel interposed, on behalf of the appellant, (1) a written plea of not guilty by reason of insanity at the time of the commission of the alleged offense, and (2) a written allegation that she was incompetent to stand trial. As a consequence the court, pursuant to Md. Code, Art. 59, § 25 (b), ordered the appellant committed to Spring Grove State Hospital for examination and determination of the issues raised. In accordance with the requirements of Art. 59, § 26, a written report setting forth the results of the examination was filed with the court prior to trial. The report showed that in the opinion of the hospital staff, the appellant was competent to stand trial but that she was insane, under the test prescribed by Art. 59, § 25 (a), at the time of the commission of the alleged offense.

Immediately prior to the commencement of the trial, the appellant entered an additional plea of not guilty on the merits. She then advised the trial judge she had never authorized her counsel to file a plea of not guilty by reason of insanity on her behalf and therefore desired to have the plea stricken, irrespective of the hospital report with which she was familiar. Defense counsel explained to the court that he had advised his client "on several occasions that it is my duty to file a plea of not guilty by reason of insanity *whether she likes it or not.*" (emphasis added). He further stated that because of the findings set forth in the hospital report, "the plea must stand." The hospital report was next

offered in evidence by defense counsel and the court found that the appellant was competent to stand trial. The judge then advised the appellant that "the court is not going to take it on itself to let you withdraw [strike] the plea of not guilty by reason of insanity for the particular reason that it is certainly not in your benefit." He stated that he was going forward with the trial on the merits and intended to delay any further determinations of the plea of not guilty by reason of insanity.

At the conclusion of all the evidence the appellant asked the court if she could be heard further in regard to her insanity plea and was granted the privilege. She then asked permission to withdraw the insanity plea and proceeded to disagree with the findings contained in the hospital report. The basic disagreement between her and the hospital staff at the time of her examination was that she refused medication because she had no illness at that time. She also stated that some of her disagreements were on a religious basis.

The judge considered the report and the appellant's representations and denied her request to withdraw the plea. He then announced that the evidence established beyond a reasonable doubt that the appellant had violated the law as charged (Art. 27, § 7 (arson)) if she was sane at the time, but proceeded to find her not guilty by reason of insanity at the time of the commission of the alleged offense.[2]

## A. RIGHT TO HAVE INSANITY PLEA STRICKEN

We think the evidence established that defense counsel entered the plea of not guilty by reason of insanity without the affirmative consent and against the express objection of the appellant.

This Court fully discussed the nature of a plea of not

---

2. In order to find an accused not guilty by reason of insanity, it is necessary that there be evidence sufficient to warrant a conviction if the accused were sane at the time. See *Morris v. State*, 11 Md. App. 18, 25, 272 A. 2d 663.

guilty by reason of insanity in the recent case of *White v. State*, 17 Md. App. 58, 299 A. 2d 873. We said at 61-62:

> "* * * [A] plea of insanity is no more than the assertion of an affirmative defense. The defense is not any different in its basic nature than other affirmative defenses, such as self defense or coercion. * * * Like any defense, the question of whether an insanity defense should be raised remains a matter of trial strategy to be determined by counsel after consultation with his client. * * *"

In approving the right of trial counsel to make a decision regarding trial strategy (placing the accused on the witness stand in support of his claim of self defense), we said in another recent case, *State v. McKenzie*, 17 Md. App. 563, 586, 303 A. 2d 406:

> "Justice Harlan stated the position forcefully in *Brookhart v. Janis, supra*, [384 U. S. 1] (concurring opinion), at 384 U. S. 8:
>
> > '. . . I believe a lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval.'"

See also 7 C.J.S. *Attorney and Client*, § 80; 7 Am. Jur. 2d, *Attorneys at Law*, § 120.

Applying our holdings in *White, supra* and *McKenzie, supra* to the case before us, we conclude that defense counsel had the authority, after consultation with the appellant, to enter the insanity plea as a matter of trial strategy, irrespective of the lack of consent and the express objections of the appellant.[3] We further conclude that the objections of

---

3. Md. Code, Art. 59, § 26 (b) provides in pertinent part:

"When it is desired to interpose the defense of insanity on behalf of one charged with the commission of a crime *the defendant or his counsel* shall at the time of pleading to the * * * indictment * * * file a plea in writing in addition to the plea or pleas otherwise required or permitted by law, alleging that the defendant was insane at the time of the commission of the alleged offense. * * *" (emphasis added)

the appellant to the entry of the plea are without legal significance in any event. As a lay person, she was not competent to form or express an opinion as to her sanity at the time of the offense, under the test prescribed by Art. 59, § 25 (a). This Court so held in *Greenleaf v. State,* 7 Md. App. 575, 256 A. 2d 552. In that case, we said at 578:

> * * * [W]hether or not the accused is insane under the test prescribed by Section 9(a) [now § 25(a) of Art. 59] — must be reached by a medical diagnosis and must therefore be made by medically trained psychiatrists to be admissible in evidence. * * *"

It is also patent that in the light of the ultimate psychiatric findings, the decision of defense counsel to file the insanity plea has been fully vindicated as a necessary procedure to accomplish fundamental fairness and due process for the appellant.

We therefore hold that the trial judge was not in error in refusing to strike the plea.

### B. RIGHT TO HAVE INSANITY PLEA WITHDRAWN

In addition to her assertion that the insanity plea was improperly entered and therefore that it should have been stricken, the appellant also requested that she be allowed to withdraw it at the conclusion of the evidence.

For the reasons already discussed, we hold that the trial judge did not abuse his discretion and was not in error in denying the appellant's request to withdraw the plea of insanity at the conclusion of the trial.

### III

### SUFFICIENCY OF EVIDENCE TO SUPPORT THE VERDICT

The appellant's contention that the evidence was legally insufficient to justify the court in finding her insane at the time of the offense, under the test prescribed in Art. 59, § 25 (a), is patently without merit. As heretofore pointed out, the

588

only competent evidence before the court on this issue was the hospital report, which was entirely sufficient to support the court's finding.

We conclude therefore that the trial court was not clearly in error in finding the appellant not guilty by reason of insanity at the time of the alleged offense.

*Judgment affirmed.*