OPINION OF THE COURT
D. Bruce Crew, III, J.
Following a jury trial defendant was convicted of murder in the second degree. She now moves to set the verdict aside on the grounds that it is against the weight of the evidence and that the court erred in failing to charge the jury with respect to the affirmative defense of mental disease or defect.
With regard to the first prong of defendant’s motion, a trial court is empowered to set aside a verdict based upon an error which if raised upon appeal would require a reversal or modification as a matter of law (CPL 330.30 [1]). A reversal or modification based upon weight of evidence considerations involves matters of fact, not of law. Therefore, this court is without authority to grant defendant’s motion on the ground that the verdict is against the weight of the evidence (People v Colon, 65 NY2d 888; People v Carter, 63 NY2d 530).
The defendant’s second contention must be addressed, because, if valid, it would constitute an error which if raised upon appeal would require a reversal as a matter of law. A brief recitation of some of the facts is necessary for proper analysis of the claimed error.
In the early morning hours of February 6, 1986, the defendant fatally stabbed the deceased with a butcher knife. It developed that at the time of the killing and for some time prior thereto, the defendant was suffering from a mental disease, as a result of which she entertained the delusion that she was "Jezreel, Lord God Woman”. A psychiatrist, testifying *946 on behalf of the defendant, was of the opinion that the defendant’s actions on the morning of the killing were influenced by extreme emotional disturbance. He testified that he had not examined the defendant for the purpose of determining her sanity at the time of the killing, and that he was not claiming that she was insane at such time. The People’s expert was of the opinion that the defendant did not act under the influence of extreme emotional disturbance. He further testified that at the time of the killing the defendant did not suffer from a mental disease or defect, as a result of which she lacked substantial capacity to know or appreciate the nature and consequences of her conduct or that such conduct was wrong, and he detailed his reasons for that opinion.
The defendant made two out-of-court statements, which were admitted into evidence, in which she stated that she knew that her stabbing the decedent would kill him and that was precisely what she intended. She further stated she knew that what she was doing was against the law and that she would go to jail as the result. Additionally, the defendant testified at the trial that she knew that she was killing the defendant when she stabbed him, she knew that what she did was against society’s laws, and she was aware of the constraints of the Fifth Commandment, but that she went by her own rules.
Prior to closing arguments the court met with counsel and the defendant and advised them of the proposed jury charge, which did not include instructions concerning the principles of the affirmative defense of mental disease or defect. At that conference defense counsel requested that the court instruct the jury in that regard, to which his client immediately protested. As the result of defendant’s assertion that she did not want the jury charged as to the insanity defense, the court declined to do so. Defense counsel excepted to that ruling and seeks to set the verdict aside on the ground that the court was in error.
The first issue to be addressed is the effect of the defendant’s decision that the court not instruct the jury as requested by her attorney. Although counsel has the power to make decisions regarding trial strategy, the client retains ultimate authority over the conduct of litigation (Code of Professional Responsibility, EC 7-7; Prate v Freedman, 583 F2d 42). "Once a client is fully informed as to the legal consequences of a waiver of a defense that may be available, the decision whether to forego a legal defense is ultimately for the *947 client and not for the lawyer (EC 7-8). Accordingly, the lawyer is bound to follow the client’s instructions” (Opns of Common Professional Ethics, NY St Bar Assn, Opn No. 155 [1970]).
In this case, defense counsel satisfactorily performed his duty of keeping the defendant informed as to the legal consequences of her decision. The issue, however, is whether the defendant had sufficient intelligence and judgment, during all stages of the proceeding, to listen to the advice of counsel, and based upon that advice, appreciate that one course of conduct may have been more beneficial to her than another. This is not to be confused with the issue of competence. The court expressly found defendant to be competent at a pretrial hearing held on June 25, 1986. While the question of defendant’s competency can be raised again by any party or by the court prior to final judgment when the presence of certain warning signals warrant it (People v Picozzi, 106 AD2d 413), there is no reason to believe that at the time of her October 1986 trial, defendant lacked the ability to consult with her lawyer with a reasonable degree of rational understanding or that she lacked a rational and factual understanding of the proceedings against her (see, Dusky v United States, 362 US 402). Defendant never displayed any erratic or unusual behavior during the trial that might indicate incompetency on her part. The defendant appeared to be oriented as to time and place; to be able to perceive, recall, and relate events in great detail; and to have an understanding of the process of the trial and the roles of the Judge, jury, prosecutor, and her attorney. In addition, she appeared to be able to maintain her working relationship with her attorney (People v Valentino, 78 Misc 2d 678, 684-685), and defense counsel made no claim that the defendant’s condition deteriorated in any way that would impair their ability to communicate. The court therefore concludes that the defendant remained competent at the trial.
The question regarding defendant’s capacity to listen to and to appreciate counsel’s advice, however, remains.* Any judgment of the defendant’s ability in this regard is a wholly subjective matter. Based on the nature of the court’s colloquy with the defendant and defendant’s counsel, the defendant’s *948 own testimony, and the intelligence defendant displayed during her own examination of her expert, as well as the court’s close observations of the defendant throughout the proceeding, the court finds that defendant had sufficient intelligence to understand and appreciate counsel’s advice. Therefore, the court concludes that it was justified in denying counsel’s request to charge the defense of mental disease or defect based on defendant’s objection to it.
Assuming, arguendo, that the court should have considered a charge of mental disease or defect in the face of the defendant’s protestation, the issue then becomes whether such a charge was warranted on the facts of this case.
The defense of mental disease or defect must be established by the defendant by a preponderance of evidence (Penal Law §§ 40.15, 25.00). Therefore, in order for the defendant to be entitled to the charge of mental disease or defect, there must exist a reasonable view of the evidence upon which might be predicated the conclusion that at the time of her conduct, as a result of mental disease or defect, she lacked substantial capacity to know or appreciate the nature and consequences of such conduct or that such conduct was wrong (cf. People v Moye, 66 NY2d 887; People v Scarborough, 49 NY2d 364; People v Pepe, 79 AD2d 1011). We are here dealing with a weight of the evidence question. Although not previously articulated as such, the reasonable view of the evidence test used in criminal cases is an analog of the weight of the evidence test applied in civil litigation. The civil courts of this State have consistently held that the standard to be applied in such cases is the fair interpretation standard (Nicastro v Park, 113 AD2d 129; Eveleth v Barnett, 84 AD2d 523). Put quite simply, in order for a court to decline to charge the defense, it must find that the evidence so preponderates in favor of the People that a contrary finding could not be reached on any fair interpretation of the evidence (cf. O’Boyle v Avis Rent-A-Car Sys., 78 AD2d 431). This inquiry is not to be confused with the question of whether, as a matter of law, there is legally sufficient evidence to raise a question of insanity (cf. Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., 46 NY2d 528; Cohen v Hallmark Cards, 45 NY2d 493). To be sure, the evidence of defendant’s numerous psychiatric hospitalizations and the fact that at the time of the killing she was suffering from a mental disease as a result of which she entertained the delusion that she was "Lord God Woman” was legally sufficient to raise an issue as to her sanity (People v *949 Silver, 33 NY2d 475). However, the determinative question remains. Based upon all of the evidence adduced at trial, could a finding of insanity be reached on any fair interpretation of the evidence? I believe it could not.
Despite her mental illness, the defendant purchased four knives for the avowed purpose of killing Robert Hill. She tested each of the knives to determine which was the most appropriate for that purpose. She went to decedent’s bedroom and stabbed him four times while he lay defenseless in his sleep. She acknowledged that she knew what she did was against society’s law and that she would go to jail as the result, all of which indicates that she knew and appreciated the consequences and wrongness of her conduct. Defendant did testify that as "Lord God Woman” she is guided by her own rules. Nevertheless, even if thé defendant genuinely feels compelled to follow her own, as opposed to society’s rules, this does not mean that, as a result of mental disease or defect, she lacked substantial capacity to know or appreciate that such conduct was wrong. As observed by the Court of Appeals: " 'When it speaks of the defendant’s ignorance of [her] act as wrong, the law does not mean to permit the individual to be [her] own judge of what is right or wrong. It says that the individual has sufficient knowledge that an act was wrong if its perpetrator knows that [her] act is against the law and against the commonly accepted standards of morality and conduct which prevail in the community of mankind. [She] must know that [her] act was contrary to the laws of God and man’ ” (People v Wood, 12 NY2d 69, 76).
Given the above, it seems quite clear that the defendant was legally sane at the time of the killing. Coupled with the testimony of the psychiatrists, that conclusion becomes inescapable. Defendant’s psychiatrist testified that he was not claiming that she was insane. The People’s psychiatrist testified, quite convincingly, that she was sane at the time of the killing. From all of the above it appears clear that the defendant knew and appreciated the nature and consequences of her conduct and that such conduct was wrong. A contrary finding could not be reached on any fair interpretation of the evidence when viewed in the light most favorable to the defendant (People v Farnsworth, 65 NY2d 734), and she was not entitled to the charge concerning the affirmative defense of mental disease or defect. Accordingly, the defendant’s motion is denied.

 While this factor is but one of many to be considered on the issue of competence, it strikes the court that certain defendants, e.g., ones suffering from schizophrenia with delusions of grandiosity or ones with a substantial cognitive deficit, may be legally competent and still not possess sufficient intelligence or sophistication to appreciate the many nuances of the criminal law and their pragmatic application to a particular case.