547 A.2d 1054

**James William TREECE**

**v.**

**STATE of Maryland.**

**No. 174, Sept. Term, 1987.**

Court of Appeals of Maryland.

Oct. 11, 1988.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The first question presented in this case is whether a criminal defendant or the defendant's counsel is entitled to decide to defend on the basis of a plea of not criminally responsible by reason of insanity. The Circuit Court for Prince George's County and the Court of Special Appeals agreed that, despite the objections of the client, the decision was for defense counsel to make. *Treece v. State*, 72 Md.App. 644, 532 A.2d 175 (1987). We shall hold that a defendant who is competent is entitled to decide whether the defense of criminal responsibility is to be interposed at that trial.

The second question before us is whether the defense is entitled to make the concluding argument on the issue of criminal responsibility when that issue is raised in a criminal case. Although we shall not decide the question, we shall refer it and related issues to the Standing Committee on Rules of Practice and Procedure.

Because the facts specific to each of these questions are somewhat different, we shall recount them as we analyze the issues. As an introductory matter it suffices to say that a jury in the Circuit Court for Prince George's County convicted petitioner, James William Treece, of second degree rape and false imprisonment after a trial at which defense counsel interposed on Treece's behalf a plea of not criminally responsible. Md. Rule 4–242.

### I. Who Decides on the Plea—Defendant or Defense Counsel?

Treece's indictment was presented on 3 December 1985. On 14 January 1986 the assistant public defender assigned to represent him filed pleas of "not guilty" and "not responsible for criminal conduct" (Md.Rule 4–242) together with a request that Treece be evaluated "as to whether he is incompetent to assist in his defense and understood the nature of the charges."

Defense counsel retained a psychiatrist and a psychologist to examine Treece. After considerable delays caused by confusion as to exactly who was doing what, Treece was examined at the Clifton T. Perkins Center. All who expressed an opinion on the point agreed that he was competent to stand trial. On 24 November 1986, as that trial was about to begin, Treece announced that he would like to make a "pretrial statement...." With the court's permission he asserted:

... I have been incarcerated for 417 days and ... I have never accepted a not criminally responsible plea and fought against. I was not present at my arraignment and the plea was entered by counsel for me and the fact that I was forced to undergo a mental evaluation, I

perceive that to be a violation of my rights under the Civil Rights and Privacy Act. I feel my rights of due process have been denied and under the Sixth Amendment and rights to speedy trial have been violated....

Treece then proceeded with a remarkably articulate argument (extending over almost a page and a half of the transcript), replete with citations and detailed chronology, explaining why he had been denied the right to a prompt trial. At the conclusion of this address, he restated his initial position. The plea of not criminally responsible was not filed on his behalf. "It is a plea I am not going to accept."

There ensued a discussion between counsel and court, during which no one questioned the accuracy of the facts expounded by Treece; instead, the reasons for various delays were explained. The court again addressed Treece:

Let me say this. As to who decides to file the plea, think about this for a minute. Let me give you a hypothetical. It is not your case.

Assuming someone was really insane and couldn't make decisions and their attorney thought they were too insane to go to trial. Who do you think ought to make the decision as to whether or not to file an insanity plea, the person who is insane or the lawyer?

TREECE: I would say the lawyer, Your Honor.

THE COURT: I know that's not your case. But that's the case sometimes. That's part of the reason why a decision as to what plea to make is the lawyer's—it is the lawyer's and not the client's. When your counsel made the decision to file this plea, it is his decision. He has a right to make that decision, regardless.

The trial proceeded. During opening statement defense counsel emphasized Treece's asserted lack of criminal responsibility by references to delusions that Treece had suffered and to his paranoid condition. The State's case, presented largely through the victim, a neighbor of Treece's, was one of forcible rape. Treece, testifying in his

own defense, asserted that the sexual intercourse had been consensual. His wife, also presented by the defense, spoke of some bizarre behavior exhibited by Treece, which included his statements that he was being watched by the FBI and CIA, that the victim's husband worked for one of those agencies, and that he had caught an FBI agent in his (Treece's) attic by nailing the attic shut. Dr. David Shapiro, a forensic psychologist, explained in detail why he thought Treece was paranoid, distorted reality, and was not criminally responsible at the time of the offense. Dr. Neil Blumberg, a forensic psychiatrist, reached the same conclusion. A psychiatrist and a psychologist produced by the State and a unanimous Perkins staff were of the opposite view.

The trial judge, carefully and at length, instructed the jury on the law of criminal responsibility. During its deliberations the jury sent out three notes on the subject. At the end, as we have recounted, it found Treece guilty, rejecting his plea of not criminally responsible as well as his not guilty plea.

Treece filed a *pro se* motion for a new trial. Although raising other issues, its basic thrust was that evidence admitted and arguments made under the not criminally responsible plea had hopelessly prejudiced his defense; he reiterated that he had never accepted that plea. The court denied the motion, observing that Treece's lawyer had entered the plea despite Treece's objections and that "it was a reasonable plea under the circumstances...."

The State now insists that the trial judge was correct. It argues that the decision to enter a plea asserting lack of criminal responsibility is merely a tactical "trial decision" that a lawyer is entitled to make even in the face of the client's disapproval. It further asserts that we should treat this case as one involving allegations of ineffective assistance of counsel and relegate Treece to an attempt to obtain post-conviction relief. *See generally Johnson v. State,* 292 Md. 405, 434–435, 439 A.2d 542, 558–559 (1982); Md.Code

(1957, 1987 Repl.Vol.), Art. 27, § 645A. We disagree with both of these arguments.

We address the second argument first. Quite simply, this is not an ineffective assistance of counsel case. Indeed, given the record here, a defense lawyer would expose himself to the very real possibility of post-conviction ineffective assistance charges if he did not, at minimum, fully advise his client to enter a plea of not criminally responsible. The issue here is not whether it was reasonable for Treece's lawyer to file the plea—it obviously was. The question is whether Treece was entitled to make an intelligent and voluntary decision to withdraw the plea of not criminally responsible.

On several occasions prior to this case, the Court of Special Appeals has suggested or held that the decision to plead not criminally responsible is one for counsel, not client, to make. *See, e.g., White v. State,* 17 Md.App. 58, 61–62, 299 A.2d 873, 874–875 (1973); *List v. State,* 18 Md.App. 578, 586–587, 308 A.2d 451, 456 (1973), *vacated,* 271 Md. 367, 316 A.2d 824 (1974); *Riggleman v. State,* 33 Md.App. 344, 350–351, 364 A.2d 1159, 1163 (1976). Its most fully articulated explanation for this view is found in Judge Scanlan's opinion in *White.* The position there expressed is that a plea of not criminally responsible does not entail the "severe, and usually, irrevocable consequences" of a plea of guilty. Instead, it represents the assertion of an affirmative defense and "[l]ike any defense, the question of whether an insanity defense should be raised remains a matter of trial strategy to be determined by counsel after consultation with his client." *White,* 17 Md.App. at 62, 299 A.2d at 875. The State espouses that same position here.

It is certainly true that "[w]hen a defendant is represented by counsel, it is counsel who is in charge of the defense and his say *as to strategy and tactics* is generally controlling...." *Parren v. State,* 309 Md. 260, 265, 523 A.2d 597, 599 (1987) [emphasis supplied]. "[A] lawyer may properly make a *tactical* determination of how to run a trial even in

the face of his client's incomprehension or even explicit disapproval." *Brookhart v. Janis,* 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314, 319 (1966) (Harlan, J., concurring) [emphasis supplied]; *see also Curtis v. State,* 284 Md. 132, 145–148, 395 A.2d 464, 472–473 (1978) (*tactical* decisions made by competent attorney ordinarily will bind criminal defendant). Were it otherwise, indeed, the trial of a criminal case could become chaotic.

Thus, decisions "to forego cross-examining certain State's witnesses, to forego confrontation by non-objection to hearsay, to forego objection to illegally seized evidence or to involuntary confessions (provided some tactical benefit might be extracted from their admission into evidence)" have been said to be matters usually allocated to defense counsel alone. *State v. McKenzie,* 17 Md.App. 563, 585, 303 A.2d 406, 418 (1973); *see also Henry v. Mississippi,* 379 U.S. 443, 451–452, 85 S.Ct. 564, 569, 13 L.Ed.2d 408, 414–415 (1965) (counsel's failure to object to testimony about evidence seized during unlawful search could operate as waiver of fourth amendment issue); *Nelson v. California,* 346 F.2d 73, 81 (9th Cir.1965) (counsel is the manager of a lawsuit); Standard 4–5.2(b), *ABA Standards for Criminal Justice* (2d ed. 1980) ("decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client"). *But see United States v. Stephens,* 609 F.2d 230, 232–233 (5th Cir.1980) (counsel may waive client's confrontation rights if, among other conditions, client does not object); Chused, "*Faretta* and the Personal Defense: The Role of a Represented Defendant in Trial Tactics," 65 Cal.L.Rev. 636 (1977) (arguing that under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), client is entitled to a substantial decisional role as to trial tactics).

Generally, then, there is agreement that as to some matters connected with a criminal trial, counsel has the final say; there is not agreement, however, as to precisely

what those matters are. We need not attempt to draft a definitive list, nor would it be useful for us to try to draw a bright line separating strategic and tactical (or perhaps just tactical) choices from other kinds of decisions. It is clear that there are some decisions that a competent defendant is entitled to make, regardless of the views of counsel, if the defendant makes them knowingly and voluntarily.

In *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), for instance, the defendant said he did not wish to plead guilty. His lawyer, nevertheless, entered what the Supreme Court said was "the equivalent of a guilty plea", depriving the defendant of "the right to be confronted with and cross-examine the witnesses against him." *Brookhart*, 384 U.S. at 7, 86 S.Ct. at 1248, 16 L.Ed.2d at 318–319. The issue, wrote Justice Black for the Court, was "whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty...." *Id.* at 7, 86 S.Ct. at 1248, 16 L.Ed.2d at 319. The Court held "that the constitutional right of a defendant cannot be waived by his counsel under such circumstances." *Id.* Four years later the Court ruled that a trial judge could constitutionally accept a plea of guilty to a reduced charge from a defendant who insisted he was innocent, but who had made a voluntary and intelligent choice to plead guilty in order to avoid a possible death sentence. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Justice White explained that a plea should not be forced on a defendant, who "must be permitted to judge for himself" which of various alternative pleas should be made. 400 U.S. at 33, 91 S.Ct. at 165, 27 L.Ed.2d at 169.

Finally, in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court "confront[ed] ... a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817, 95 S.Ct. at 2532, 45 L.Ed.2d at 572. The Court recognized the

importance of counsel to fair trial; it affirmed the right of every defendant, rich or poor, to the assistance of counsel; but it held that a defendant who intelligently and voluntarily chooses to represent himself cannot be compelled to be represented by counsel. Justice Stewart explained for the Court:

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* at 834, 95 S.Ct. at 2540–2541, 45 L.Ed.2d at 581 (quoting *Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed. 353, 363 (1970) (Brennan, J., concurring)).

■ These cases teach that the defendant ordinarily has the ultimate decision when the issue at hand involves a choice that will inevitably have important personal consequences for him or her, and when the choice is one a competent defendant is capable of making. Additional examples of this sort of decision include whether to testify on one's own behalf, *Rock v. Arkansas,* —— U.S. ——, ——, 107 S.Ct. 2704, 2709–2710, 97 L.Ed.2d 37, 46–47 (1987), whether to forego trial by way of a guilty plea, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 274 (1969), and waiver of right to trial by jury, *United States v. Woods,* 450 F.Supp. 1335, 1337–1338 n. 2 (D.Md.1978). On which side of the line does the choice to plead not criminally responsible fall?

A number of the authorities we have just cited emphasize the defendant's right to decide what sort of a plea is to be entered. As stated in Standard 4–5.2 of the *ABA Standards for Criminal Justice:*

> (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately

for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter....

See also Md. Lawyers' Rules of Professional Conduct Rule 1.2(a) (1988) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered....."). Also, while Rule 4–242(b)(1), like § 12–109 of the Health–General Article of the Annotated Code of Maryland, provides that this plea may be made by the defendant or counsel, the reference to counsel does not require us to conclude that counsel may act against the wishes of a competent client.

The State's response is that the plea of not criminally responsible is an affirmative defense, no different from defenses such as self-defense, coercion, entrapment, or consent. Further, the State argues, that because these affirmative defenses may be imposed by counsel on an unwilling defendant, the same result should follow as to the "affirmative defense" of not criminally responsible. It is by no means clear that the State is correct about the right of counsel to force a competent client to assert affirmative defenses such as self-defense against the client's will, but that is a question we need not and do not decide. Even if we, for the sake of argument only, take that rather substantial leap, and if we further assume that a plea of not criminally responsible is indeed an affirmative defense, we believe that defense is inherently different from the other affirmative defenses because of the potentially far-reaching consequences which may result for the defendant.

All of these defenses have an important common element. When any of them is employed, the defendant in effect admits that he or she has done the acts with which he or she is charged. See Gardner v. State, 41 Md.App. 187, 196, 396 A.2d 303, 309 (1979). When asserting each of them, except lack of criminal responsibility, the defendant contends that because of the grounds for defense asserted, no criminal liability should attach to those acts. If the defense prevails, the defendant is found not guilty and goes free.

It is quite otherwise when a defendant "wins" under a plea of not criminally responsible.

When the defense of not criminally responsible is asserted, along with a not guilty plea, the initial question is the defendant's guilt or innocence. *Langworthy v. State*, 284 Md. 588, 598, 399 A.2d 578, 584 (1979). If the verdict is guilty, the next step is the determination of criminal responsibility. If lack of responsibility is found, that is not an acquittal. The result of "the successful interposition of a plea of insanity is not that an accused is to be found not guilty of the criminal act it was proved he had committed, but that he shall not be punished therefor." *Id.; Anderson v. Dept. of Health & Mental Hygiene*, 310 Md. 217, 224–225, 528 A.2d 904, 908 (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988). *See also Ford v. Ford*, 307 Md. 105, 112–117, 512 A.2d 389, 393–395 (1986).

In short, the defendant who "successfully" pleads not criminally responsible is subject to the stigma of a criminal conviction, *Pouncey v. State*, 297 Md. 264, 268–270, 465 A.2d 475, 478 (1983), although he or she may not be subject to all of the consequences that would otherwise flow therefrom. *See, e.g., Ford*, 307 Md. at 122–123, 512 A.2d at 398–399 (defendant found guilty of first degree murder, but not criminally responsible may take under victim's will). Moreover, the "successful" not criminally responsible defendant is not likely to go free, at least initially. *See Anderson*, 310 Md. at 222, 528 A.2d at 907.

Ordinarily, "the court immediately shall commit the [criminally not responsible] defendant to the Department [of Health and Mental Hygiene] for institutional, inpatient care or treatment." Md.Code (1987 Cum.Supp.), § 12–111(a) Health–Gen. Art. *Cf., Jones v. United States*, 463 U.S. 354, 366–368, 103 S.Ct. 3043, 3051, 77 L.Ed.2d 694, 706–707 (1983) (indefinite commitment of insanity "acquitee" is not unconstitutional). We are aware, of course, that in certain carefully limited circumstances one who has been found not criminally responsible may be released instead of being committed to the department. Section 12–111(c). And we

understand that one who is committed enjoys the benefit of various mechanisms looking to review and redetermination of his or her mental status. *See id.*, §§ 12–113—12–119. But the burden ordinarily is on the committed person to prove eligibility for release. *Id.*, §§ 12–113(d), 12–117(a), 12–118(c)(4)(i). The fact remains that the defendant who "wins" on a not criminally responsible plea is faced with both the stigma of a criminal conviction and with indefinite commitment to a state institution. The defendant who is acquitted on a defense of self-defense, coercion, entrapment, or consent is faced with neither. The "affirmative defense" of not criminally responsible thus stands in stark contrast from all of the other affirmative defenses listed by the State. For this reason alone, its consequences are so grave and personal that a competent defendant should have the right to make his or her own decision as to whether to interpose that plea.

There are, moreover, yet other factors that distinguish a plea of not criminally responsible from ordinary affirmative defenses. If the offense of which the defendant is accused is a minor one, with a low maximum penalty, it may seem (to the defendant) much more sensible to risk imposition of the maximum penalty rather than to chance indefinite commitment after a successful plea of not criminally responsible. *See Frendak v. United States*, 408 A.2d 364, 376–377 (D.C.1979). There is a stigma that often attaches, however unreasonably, to a person with a mental disease. *Id.* A defendant may wish to avoid this. Furthermore, if the conduct in question involves what the defendant views as a political, religious, or sociological protest, an assertion that the defendant was not criminally responsible at the time may rob the protest of much of its significance in the defendant's eyes. *Id.* at 377.

Furthermore, the assertion of the defense of lack of criminal responsibility may well produce conflict with a defense on the merits. *Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir.1987). *See generally* Singer, "The Imposition of the Insanity Defense on an Unwilling Defendant," 41

Ohio St.L.J. 637, 637–639 (1980) (hereinafter "Singer"); Note, "The Right and Responsibility of a Court to Impose the Insanity Defense Over the Defendant's Objection," 65 Minn.L.Rev. 927, 944–946 (1981) (hereinafter "Note, Insanity Defense"). The present case is a good example. Treece's defense of not criminally responsible was based on his paranoidal delusions at the time of the alleged rape. The credibility of his consent defense might have been substantially undermined if the jury accepted the notion that he was subject to delusions—the consent he testified to might have been a delusion. Indeed, the testimony about Treece's mental state, although directed to his condition at the time of the offense, might have affected the jury's assessment of his present credibility. That the jury, during deliberations, sent out three notes dealing with the not criminally responsible issue suggests that the problem was on its mind. None of these problems arises in connection with the successful assertion of the ordinary affirmative defense.

Faced with the unique nature of the defense of not criminally responsible, other jurisdictions are divided on whether an unwilling defendant, who is competent to stand trial, can be forced to plead that defense. The leading case in favor of compulsion is *Whalem v. United States*, 346 F.2d 812 (D.C.Cir.1965) (en banc). The holding there is that a competent defendant may decline to raise the defense of not criminally responsible, but "he may not, in a proper case, prevent the court from injecting it." *Id.* at 818. The court, in its discretion, may interpose that defense if there appears to be evidence to support it, even though the defendant objects. *Id.* If this is done, however, and the defendant is found to have been not criminally responsible, automatic commitment does not follow. Instead, if the government wishes to do so, it must seek commitment under civil commitment procedures.

The *Whalem* court focuses on what it sees as the interests of society when it notes that a not criminally responsible defendant is blameless in the eyes of society and not

subject to punishment in the criminal courts. A court must refuse "to allow the conviction of an obviously mentally irresponsible defendant...." *Id.* When there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must, in the interest of justice, be part of the case. Despite considerable criticism [1] the District of Columbia Circuit has adhered to the *Whalem* rule. *See United States v. Wright,* 627 F.2d 1300 (D.C.Cir. 1980); *Cross v. United States,* 389 F.2d 957 (D.C.Cir.1968). We observe in passing that *Whalem* supports the State's position in this case only indirectly. *Whalem* does not hold that counsel may assert an insanity defense against the client's wishes, but only that under appropriate circumstances, the court itself may insist on interposition of the defense.

The leading case on the other side of the issue, *Frendak,* 408 A.2d 364, also deals with the role of the court, but it lends powerful support to Treece's position. That case holds that "[b]ecause the defendant must bear the ultimate consequences of any decision, ... if a defendant has acted intelligently and voluntarily, a trial court must defer to his or her decision to waive the insanity defense." *Id.* at 378 [footnote omitted]. If the court must defer to the defendant's decision, so must defense counsel.

Although some jurisdictions, other than the District of

---

1. *See, e.g., United States v. Robertson,* 507 F.2d 1148, 1161 (D.C.Cir. 1974) (separate opinion of Bazelon, C.J.); *United States v. Robertson,* 430 F.Supp. 444, 447–448 n. 4 (D.D.C.1977); *Frendak v. United States,* 408 A.2d 364 (D.C.App.1979); *State v. Jones,* 99 Wash.2d 735, 664 P.2d 1216 (1983) (overruling *State v. Smith,* 88 Wash.2d 639, 564 P.2d 1154 (1977) which had adopted *Whalem* approach); Cohn, "Offensive Use of the Insanity Defense: Imposing the Insanity Defense Over the Defendant's Objection," 15 Hastings Const. L.Q. 295, 312–318 (1988); Singer, "The Imposition of the Immunity Defense on an Unwilling Defendant," 41 Ohio St. L.J. 637, 654–663 (1980) (hereinafter "Singer"); Note, "The Right and Responsibility of a Court to Impose the Insanity Defense Over the Defendant's Objection," 65 Minn.L.Rev. 927, 942–957 (1981) (hereinafter "Note, Insanity Defense").

Columbia Circuit, follow *Whalem,*[2] the weight of authority is the other way. Singer, 41 Ohio St.L.J. at 650–654. *See, e.g., Snider v. Cunningham,* 292 F.2d 683, 685 (4th Cir. 1961) ("A prisoner who insists that he did not commit a crime can hardly be forced by his counsel to confess it in order to support a tenuous defense of insanity"); *Lowenfield v. Phelps,* 817 F.2d 285, 292 (5th Cir.1987), *aff'd,* —— U.S. ——, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision [to forego the defense of not criminally responsible] ..."); *State v. Fayle,* 134 Ariz. 565, 576, 658 P.2d 218, 229 (Ct.App.1982); *People v. Redmond,* 16 Cal.App.3d 931, 938, 94 Cal.Rptr. 543, 548 (1971); *Briggs v. United States,* 525 A.2d 583 (D.C.1987); *State v. Lowenfield,* 495 So.2d 1245, 1252 (La.1985) ("It appears beyond argument that when a competent defendant wishes to plead not guilty rather than guilty by reason of insanity, and clearly understands the consequences of his choice, then the counsel must acquiesce to the wishes of his competent client"); *State v. Kahn,* 175 N.J.Super. 72, 81–82, 417 A.2d 585, 590–591 (1980); *People v. MacDowell,* 133 Misc.2d 944, 947–948, 508 N.Y.S.2d 870, 872–873 (N.Y.Sup. Ct.1986); *People v. Gonzalez,* 20 N.Y.2d 289, 294, 229 N.E.2d 220, 223, 282 N.Y.S.2d 538, 542 (1967); *State v. Peterson,* 70 Or.App. 333, 342–344, 689 P.2d 985, 990–991 (1984); *State v. Jones,* 99 Wash.2d 735, 743, 664 P.2d 1216, 1220 (1983) (en banc) ("we concur in the belief that basic respect for a defendant's individual freedom requires us to permit the defendant himself to determine his plea"); *State v. Higa,* 38 Wash.App. 522, 526–527, 685 P.2d 1117, 1119–1120 (1984); *see also People v. Gauze,* 15 Cal.3d 709, 717–718, 542 P.2d 1365, 1370, 125 Cal.Rptr. 773, 778 (1975)

---

**2.** The author of "Note, Insanity Defense" lists seven jurisdictions that take the *Whalem* approach. "Note, Insanity Defense" at 931 n. 21. These include cases from the Court of Special Appeals of Maryland and also the Supreme Court of Washington's decision in *Smith,* subsequently overruled in *Jones; see* n. 1, *supra.*

(en banc) (reaching same result, but on basis of interpretation of California statute).

We find the reasoning of these cases persuasive. The potential consequences, to the defendant, of a plea of not criminally responsible are grave and far-reaching. In a free society an individual faced with a choice of this sort should be allowed to make it and to live with its consequences, notwithstanding that society deems the choice inappropriate. We hold that, ordinarily, a competent defendant should be allowed to decide, personally, whether to invoke it. Absent the most unusual circumstances, this decision binds not only counsel but also the trial judge. Any holding or language to the contrary contained in *Riggleman*, 33 Md.App. at 351, 364 A.2d at 1163, *List*, 18 Md.App. 586–587, 308 A.2d at 456, *White*, 17 Md.App. at 61–62, 299 A.2d at 874–875, and any other decision of like tenor is overruled or disapproved.

This is not to say that counsel and trial judge have no role to play when questions as to mental fitness arise in a case. The issue of competency to stand trial, for example, is one that should be raised by counsel in proper circumstances. Obviously, a defendant who does not have the mental capacity to decide whether to reject the defense of not criminally responsible cannot be allowed to make that decision. And the question of competence to stand trial is ultimately one for the trial court to make. Md.Code (1987 Cum.Supp.), § 12–103(a) Health–Gen. Art. *See also Johnson v. State*, 67 Md.App. 347, 358–359, 507 A.2d 1134, 1140, *cert. denied*, 307 Md. 260, 513 A.2d 314, *cert. denied*, 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986). Moreover, it may well be the proper course for defense counsel, at the early stages of a case, to file a plea of not criminally responsible if the facts appear to warrant it. Of course, counsel should consult with client as to the consequences and impact of interposing that plea, and the reasons, from the viewpoint of trial strategy, why it might be advantageous or disadvantageous to do so. But if the defendant is

competent and makes what appears to be a knowing, intelligent choice, counsel must honor that choice.

If there is disagreement between client and counsel on this point, and if counsel has doubts about the client's competence, or doubts about the intelligent and knowing nature of the client's decision, it is counsel's responsibility to bring the problem to the court's attention. The court also may become aware of the problem when, as in this case, the conflict between counsel and client is raised by the client. When such a conflict arises, the trial judge is not entitled to insist that a competent but unwilling defendant plead that defense, however unwise the judge thinks the failure to do so may be. The decision is one for the defendant to make, after proper consultation with counsel, just as a competent defendant must, ultimately, decide the wisdom of self-representation or of a plea of guilty. The judge, however, must be sure that the defendant's decision is intelligent and voluntary.

The first step in that analysis is to decide the defendant's competence to stand trial if competence is at issue either because raised by the defense or by the court. *See* Md.Code (1987 Cum.Supp.), § 12–103(a) Health–Gen. Art. A defendant who is able to (1) understand the nature or object of the proceedings against him or her, and (2) assist in his or her own defense is competent to stand trial. *Johnson,* 67 Md.App. at 358, 507 A.2d at 1140; Health–Gen. Art., § 12–101(d). To meet this test, a defendant must have " 'present ability to consult with his lawyer with a reasonable degree of rational understanding—and ... a rational as well as factual understanding of the proceedings against him.' " *Morrow v. State,* 293 Md. 247, 255, 443 A.2d 108, 113 (1982) (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960)). Moreover, the determination is not one to be made lightly but upon testimony and evidence on the record. *Sangster v. State,* 312 Md. 560, 564–565, 541 A.2d 637, 639 (1988); *Jones v. State,* 280 Md. 282, 289, 372 A.2d 1064, 1068 (1977); Health–Gen. Art., § 12–103(a). And the determination that a de-

fendant is competent must be beyond a reasonable doubt. *Jolley v. State,* 282 Md. 353, 365, 384 A.2d 91, 98 (1978).

The next step is to ascertain that the defendant's decision not to plead not criminally responsible is intelligent and voluntary. *See Kahn,* 175 N.J.Super. at 82, 417 A.2d at 591. The decision to forego a not criminally responsible plea requires the same ability to choose between various alternatives as does the decision to plead guilty, *Hudson v. State,* 286 Md. 569, 595–596, 409 A.2d 692, 705–706 (1979), to elect to proceed without counsel, *Fowlkes v. State,* 311 Md. 586, 589–590, 536 A.2d 1149, 1151 (1988), or to waive a jury trial. The defendant must be made aware of available alternatives and of the advantages and disadvantages of one choice as compared to another. The choice must be the defendant's own uncoerced decision, freely made in light of his or her understanding of those alternatives and their respective consequences. In this context, we note, "intelligent" does not necessarily equate to "wise." It simply means that the defendant must have an understanding of the alternatives and consequences that is not based on ignorance or incomprehension. *See Hudson,* 286 Md. at 595, 409 A.2d at 705. *See also Hoey,* 311 Md. at 480–487, 536 A.2d at 625–628 (discussing at length voluntariness in the context of a confession).

When Treece told the trial court he did not wish to plead not criminally responsible, there seems to be no question that he was competent to stand trial. As we have now held, that court was wrong in holding that the pleading decision was for counsel and not client to make. For that reason we must reverse. On remand, if Treece remains competent and still wishes not to plead not criminally responsible, the trial judge must be satisfied on the record that Treece's decision is intelligent and voluntary. If it is, then that decision governs both court and counsel on the pleading question.

## II. Order of Argument on the Plea of Not Criminally Responsible

We need not consider the proper order of argument on the plea of not criminally responsible. Treece's convic-

tions must be set aside, and in the event of a new trial, he may adhere to his desire not to raise that defense. But should he elect otherwise, the question of order of argument on that issue is not free from difficulty.

Section 12–109(b) of the Health–General Article places on the defendant "the burden to establish, by a preponderance of the evidence, the defense of not criminally responsible." This marks an about-face from prior law under which the State had to prove the defendant's "sanity" beyond a reasonable doubt. *See Hoey v. State*, 311 Md. 473, 490 n. 4, 536 A.2d 622, 630 n. 4 (1988). It is, of course, "[t]he general rule in Maryland ... that the party holding the 'affirmative of the issue ... has the right to begin and reply, both in the introduction of evidence and in the argument to the jury.' " *Harris v. State*, 312 Md. 225, 255, 539 A.2d 637, 652 (1988) (quoting *Kenly v. Washington County R.R. Co.*, 129 Md. 1, 6, 98 A. 232, 234 (1916)).

In *Harris* we rejected the argument that the defense at a capital sentencing hearing should be allowed to argue last because the defendant had the burden of proving the existence of a mitigating circumstance in order to avoid imposition of the death penalty. *Id.* at 257, 539 A.2d at 652. We said the State was normally entitled to open and close because "at a capital sentencing proceeding the State has the ultimate burden of persuading the jury to impose a death sentence." *Id.* The State asserts that the same result should follow here, because it bears the ultimate burden of proving guilt beyond a reasonable doubt.

Of course, the State in a criminal case bears the burden of proving guilt beyond a reasonable doubt. *Hoey*, 311 Md. at 491, 536 A.2d at 630. The issue presented by a plea of not criminally responsible, however, does not arise until a guilty verdict has been found. *Pouncey*, 297 Md. at 268, 465 A.2d at 477; Md. Code (1987 Cum.Supp.), § 12–109(c) Health–Gen. Art. The issues of guilt and criminal responsibility are separate. For the criminal responsibility issue, the burdens of pleading, producing evidence, and persuading the fact-finder that criminal punishment should not be

imposed are all borne by the defendant. It is that combination of burdens that make up the burden of proof. *See* 5 L. McLain, *Maryland Practice: Maryland Evidence* § 300.1, at 132 (1987).

This strongly suggests that the defense should be permitted to open and close argument, on the issue of criminal responsibility. That, however, could present practical problems when the guilt/innocence and criminal responsibility proofs have all been placed before the jury at a criminal trial. To have the prosecutor argue first and last (with defense counsel sandwiched in-between) on guilt/innocence and defense counsel speak first and last (with the prosecutor in-between) on criminal responsibility could produce overlap and confusion, just as the intermingling of these separate matters during trial could bring about that result.

These problems are troublesome. When added to the ways in which a defense of not criminally responsible may impede a defense on the merits, as noted in Part I, *supra,* we are led to the conclusion that, at least under some circumstances, it would be the better practice to bifurcate a trial in which criminal responsibility is an issue, with the decision on guilt or innocence to be made first, and then, if the verdict is guilty, the decision on criminal responsibility. Some jurisdictions follow this sort of procedure. *See, e.g., Robertson,* 430 F.Supp. at 444; *Redmond,* 16 Cal.App.3d at 935, 94 Cal.Rptr. at 546; *Frendak,* 408 A.2d at 366–367; *Kahn,* 175 N.J.Super. at 84, 417 A.2d at 592. Should a trial court adopt this approach, the guilt/innocence phase of the proceedings would be much simplified. The merits of the criminal case would be separated from the often unrelated issue of criminal responsibility. And, of course, there would now be no question about the order of argument. At argument concluding the trial on the merits, the State would open and close. At the conclusion of the hearing on criminal responsibility, the defense, with the burden on that issue, would do likewise.

In Maryland we have held that a bifurcated proceeding is not permissible when the issue of criminal responsibility is

raised. *Tull v. State,* 230 Md. 596, 601, 188 A.2d 150, 153 (1963). So has the Court of Special Appeals. *Bremer v. State,* 18 Md.App. 291, 315, 307 A.2d 503, 519, *cert. denied,* 269 Md. 755, *cert. denied,* 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974); *Avey v. State,* 9 Md.App. 227, 230–231, 263 A.2d 609, 611, *cert. denied,* 258 Md. 725 (1970); *Sweeney v. State,* 6 Md.App. 431, 439–440, 252 A.2d 9, 15 (1969); *see also Langworthy,* 284 Md. at 593 n. 6, 399 A.2d at 581 n. 6; *Bartholemey v. State,* 260 Md. 504, 525, 273 A.2d 164, 175 (1971), *vacated as to death sentence,* 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972).

These decisions, however, all antedate the major revisions of statutory law accomplished by Ch. 501, Acts of 1984, adopting the present provisions of Title 12, Health–General Article. The history is traced in *Anderson,* 310 Md. at 220–222, 528 A.2d at 906–907. Under the pre–1984 law, "the State had the burden of proving, beyond a reasonable doubt, that the defendant was sane at the time of the criminal activity." *Id.* Now the defense must prove lack of criminal responsibility by a preponderance of the evidence. Section 12–109(b). Under the prior law, upon a finding of "guilty but insane," initial commitment was for a limited time only, for purposes of evaluation. Indefinite commitment followed only upon establishment of the prerequisites therefor by the State and by clear and convincing evidence. And when an indefinitely committed defendant sought release, the burden was on the State to prove "by clear and convincing evidence that the criminal defendant should continue to be confined." *Anderson,* 310 Md. at 221, 528 A.2d at 906. Under the present law, a convicted defendant, found not criminally responsible, is automatically committed; § 12–111(a). *But see* § 12–111(c) (exceptions to automatic commitment). And as a general rule, the defendant has the burden of showing, by a preponderance of the evidence, that he or she is entitled to release; § 12–113(d).

These major changes in the law, shifting the burden of proof on the issue of criminal responsibility and increasing the chances of lengthy indefinite confinement for a defend-

ant found not criminally responsible, emphasize the desirability of a bifurcated proceeding in appropriate circumstances. Moreover, they render distinguishable the earlier decisions on bifurcation. Under the present statutes, bifurcation is not precluded. Bifurcation raises a number of procedural issues, however, and it is desirable, for the long term, that there be uniform State-wide standards to govern the process. Accordingly, we shall refer the bifurcation issue to our Standing Committee on Rules of Practice and Procedure for a prompt report.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY, MARYLAND.